# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 12, 2015        Decided September 18, 2015

No. 14-5002

WAYNE M. ANDERSON,
APPELLANT

v.

ASHTON B. CARTER, SECRETARY OF DEFENSE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:12-cv-01243)

*Jeffrey L. Light* argued the cause and filed the briefs for appellant.

*Bruce D. Brown* and *Gregg P. Leslie* were on the brief for *amicus curiae* The Reporters Committee for Freedom of the Press in support of appellant.

*Wayne H. Williams*, Special Assistant U.S. Attorney, argued the cause for appellees. With him on the briefs were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence* and *Jane M. Lyons*, Assistant U.S. Attorneys.

Before: HENDERSON and SRINIVASAN, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* SRINIVASAN.

SENTELLE, *Senior Circuit Judge*: Appellant Wayne M. Anderson is a freelance journalist. In July of 2010, he was working as an embed journalist at a NATO base in Afghanistan. After he reported on a controversial shooting incident at an adjoining Afghan national army base over the objections of United States military personnel assigned to the NATO operation, his embed status was withdrawn, and he was returned to the United States. Anderson brought the present action against the Secretary of Defense and subordinate officers in both their personal and official capacities, seeking, as is relevant to the present appeal, reversal of the memorandum terminating his embed status and reinstatement of his credentials and accommodation status. The district court dismissed appellant's claims in their entirety. Because we conclude that Anderson has asserted no claim cognizable by this court, we affirm the judgment of dismissal.

## I. BACKGROUND

### A. *Factual Allegations*

Because the basis of our decision that this case must be dismissed for lack of jurisdiction is not dependent upon any detail of the underlying facts, our discussion will be brief. Further detail may be found in the district court's opinion. *See Anderson v. Gates*, 20 F. Supp. 3d 114 (D.D.C. 2013).

In 2010, Anderson, a freelance journalist working under contract for a Washington, DC, newspaper, applied for status of

a military-embed journalist in Afghanistan with the North Atlantic Treaty Organization ("NATO") International Security Assistance Force, an international force created by the United Nations Security Council to assist in maintaining security in Afghanistan. In process of becoming an embedded reporter, Anderson signed and submitted an acknowledgment of the "Media Ground Rules" required by the International Security Assistance Force. That acknowledgment included a statement by the embed journalist that:

> I have read the media ground rules provided to me by International Assistance Force Afghanistan (ISAF) Public Affairs staff and agree, with my signature, to abide by them. I also understand that any violation of these ground rules is cause for the revocation of my accommodated media status with ISAF.

In July of 2010, during his first week as an embedded reporter, Anderson videotaped and photographed casualties from a shooting incident near the base where he was assigned. According to defendants, the video showed the identifiable faces of wounded soldiers. He posted the video on YouTube without receiving consent from the soldiers and before their next of kin could be notified, all in violation of the Ground Rules. Anderson disputes the accusation that his photographs and video product revealed the identity of the soldiers. Neither we nor the district court need resolve that factual dispute in order to dispose of this litigation.

A few days after the photographing and videoing incident, Colonel Hans E. Bush reviewed a request to terminate Anderson's accommodated status based on his alleged violation of the Ground Rules. Colonel Bush found that plaintiff had violated the Ground Rules and approved the termination. As a result of termination of his status, the military returned

Anderson to the United States. Upon his return, he appealed the termination through the International Security Assistance Force Public Affairs channels. In January of 2011, Colonel Gregory Julian, Chief of Public Affairs of the Supreme Headquarters Allied Powers Europe and Allied Command Operations, denied Anderson's appeal. Both Bush and Julian were subsequently named as defendants in this litigation.

B. *The Litigation*

Anderson, at that time acting without counsel, filed a three-count complaint in the United States District Court for the District of Columbia against Robert Gates, then-Secretary of Defense; John M. McHugh, then-Secretary of the Army; Colonels Bush and Julian; and Colonel Sean Mulholland. The complaint purported to seek relief against defendants in both their individual and official capacities. *See Anderson*, 20 F. Supp. 3d at 119. Count I of the complaint alleged that defendants in their individual capacities violated Anderson's First Amendment rights by terminating his status in retaliation for his constitutionally protected speech, and by refusing or neglecting to prevent such deprivations or denials of his First Amendment rights. Count II alleged a breach-of-contract claim based on the theory that the defendants had breached an agreement arising from the acknowledgment of the "Ground Rules." Count III sought "a judicial declaration that defendants' conduct deprived Anderson of his rights under the U.S. Constitution and the laws of the United States." *Id.* (quoting Anderson's complaint at ¶ 63).

All defendants moved to dismiss "for lack of personal jurisdiction over defendants in their individual capacities under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(2), for failure to state a claim upon which relief can be granted under Rule 12(b)(6), and for lack of subject-matter jurisdiction under

Rule 12(b)(1)." *Id.* The district court granted the motion and dismissed the action. Anderson filed the present appeal.

## II.  THE APPEAL

On appeal, Anderson, now acting through counsel, alleges no error in the dismissal of the claims against the defendants in their individual capacities. Indeed, he acknowledges that "[t]his appeal is limited to a suit against [d]efendants-[a]ppellees in their official capacities . . . ." Reply Br. at 16. Of course, even without the acknowledgment, any error not asserted and argued on appeal is deemed forfeited. We therefore confine our discussion to the claims against defendants in their official capacities.

Briefly put, appellant is now arguing that he has sufficiently alleged "a claim for retaliation under the First Amendment and a claim for violation of the Administrative Procedure Act." Appellant's Br. at 9. As in all cases, our first duty is to ascertain whether the district court, and derivatively this court, have jurisdiction to determine those claims. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–101 (1998). For two reasons, we conclude that appellant's claims are not within the jurisdiction of the courts.

## III.  ANALYSIS

The Supreme Court has taught in *Steel Co.* and numerous other cases that when a federal court has no jurisdiction over a case, it cannot determine any other question concerning the merits of that action. However, since the two grounds affecting our decision in this action are equally threshold questions, we will observe that appellant's claims founder on either or both of them.

First, appellant's allegations do not bring his claims within the jurisdictional statute he asserts. Briefly put, this action is barred by the sovereign immunity of the United States. Appellant forthrightly admits that, as he has asserted no error in the district court's dismissal of the claims against the individual defendants, "[t]his appeal is limited to a suit against the [d]efendants-[a]ppellees in their official capacities and therefore the suit is subject to governmental defenses including sovereign immunity." Reply Br. at 16 (citing *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985)). What appellant does not concede, but what is correct, is that an action against the United States cannot surpass the barrier of sovereign immunity without a statutory waiver. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The government's consent to be sued may not be inferred, but must be "unequivocally expressed" in statutory text. *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1448 (2012). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996).

Appellant asserts that his claim is cognizable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. Unfortunately for appellant, that statute does not waive sovereign immunity for the present claims. We note in considering Anderson's argument that it is not at all clear that he actually asserted this position below, but affording as we do lenience in our review of the pleading of *pro se* litigants, as appellant then was, we will at least consider the argument for the APA as an applicable exception to sovereign immunity. Having so considered, we determine that the APA excludes the present action by its terms.

The APA, in 5 U.S.C. § 701, provides review of actions of an agency of the United States. *See* 5 U.S.C. § 701(b)(1). The statutory definition of "agency" expressly "does not include — military authority exercised in the field in time of war." *Id.* § 701(b)(1)(G). From the very face of the complaint, all of the events surrounding the controversy between the embed journalist and the military occurred within that excluded circumstance. While certainly the conflict in Afghanistan was not a declared war, it cannot be gainsaid that it was a "war" nonetheless. As the Supreme Court noted in *Bas v. Tingy*, 4 U.S. 37, 40 (1800), "hostilities may subsist between two nations" on a limited basis, which would be properly termed "*imperfect war*," in our era to be called "undeclared war." Justice Washington in the *Bas* decision went on to note that the true definition of war is "an external contention by force, between some of the members of the two nations, authorised by the legitimate powers," even if it is not a "perfect" declared war. *Id.* at 40–41. In the present case, the facts relied upon by appellant, including the wounding of the soldiers whose photographs were at issue between Anderson and the military make it clear that, like the French in *Bas v. Tingy*, the Afghans in the present case are enemies of the United States, and the military authority against which Anderson seeks to litigate was being exercised in the field and time of war. In short, the APA does not provide a waiver of the sovereign immunity defense creating jurisdiction over Anderson's cause.

Despite the clear terms of the statute, appellant asserts that the military authority exception does not preclude judicial review of the decision to terminate his embed status. While appellant's brief does not provide a succinct expression of why the exception does not apply, the gist of his argument seems to be that the statutory exception should only apply when attempted litigation "involves military decisionmaking." Reply Br. at 12. Appellant argues that his case does not come within

that category, as he "does not ask for judicial review of the rules contained in the MGR," nor "encroach[ ] on issues such as how a military leader 'handles a casualty of one of the men or women he is charged to lead,'" nor "how a military leader should handle a casualty." *Id.* at 13.

Perhaps if the statutory exception to the APA waiver of sovereign immunity were so limited, appellant might have a colorable argument, albeit one he did not raise in the district court. But the statute is not so limited. It says what it says. Courts "assume that Congress means what it says in a statute . . . ." *Williams v. Paromo*, 775 F.3d 1182, 1188 (9th Cir. 2015). The current litigation does not come within the terms of reviewing an agency under the APA. Sovereign immunity is not waived.

As we noted above, "a waiver of the government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192. We cannot afford the statute the liberal and countertextual interpretation forwarded by appellant. We do not have jurisdiction.

We do not rule out the possibility that under other circumstances and based on other pleadings a plaintiff similarly situated to appellant might bring a retaliatory claim for violation of First Amendment rights within the jurisdiction of the court, but this is not that case. While appellant's lengthy complaint in the district court cited the First Amendment and alleged its violation in general terms, ultimately his prayer for relief made it plain that his complaint was for a lack of "procedural due process," not for the violation of his First Amendment rights. For the procedural due process claim to have any legs at all, appellant would have had to establish that he was deprived of something to which he was constitutionally entitled. As he has

shown no constitutional entitlement to the status of embed journalist, his claim did not survive the motion to dismiss in the district court, nor will it survive the lack of jurisdiction in face of sovereign immunity in this court. *Cf. Flynt v. Rumsfeld*, 355 F.3d 697 (D.C. Cir. 2004) (holding that a journalist has no constitutional right to be actively embedded in military units).

C. *Mootness*

While the Supreme Court in *Steel Co.* makes clear that once we have established that we have no subject-matter jurisdiction, we can proceed no further, we do not violate this admonition when we observe that more than one threshold basis bars adjudication. As we have noted before:

> While *Steel Co.* reasoned that subject-matter jurisdiction necessarily precedes a ruling on the merits, the same principle does not dictate a sequencing of jurisdictional issues. "[A] court that dismisses on . . . non-merits grounds such as . . . personal jurisdiction, before finding subject-matter jurisdiction, makes no assumption of law-declaring power that violates the separation of powers principles underlying . . . *Steel Company*."

*Public Citizen v. United States District Court*, 486 F.3d 1342, 1346 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)). We will therefore note that even if we err in our determination that Anderson brought no justiciable claim in the first instance, any claim which he may have asserted is now moot.

As Anderson himself acknowledges, "'[a] case is moot if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" Appellant's Supp. Br.

at 2 (quoting *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990)).  Otherwise put, "'if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed.'" *Id.* (quoting *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).

The prayer for relief in Anderson's complaint asks the court, in pertinent part, "to reverse the memorandum terminating plaintiff's embed accommodation status without procedural due process . . . ."  Appellees assert, and appellant has not disputed, that as the war in Afghanistan has drawn down, the remaining embed program is operated by NATO, which is not a party to this action.  Further, Anderson is at liberty to apply for the limited embed program still available.  There appears to be nothing this court can do that will put him back in the same position he occupied before the events alleged in the complaint and nothing the court can do to make whole any loss caused by the removal.  He has not sought damages, nor is it clear that we would have jurisdiction to grant them if he did.  This is quintessential mootness, and we have no jurisdiction over moot controversies.

Anderson attempts to escape from the trap of mootness by asserting that his additional prayer for declaratory relief underlies a live controversy.  That is, he asserts that he has a reputational injury which will be relieved by a judicial declaration that his First Amendment rights were violated.  In support of this proposition, he principally relies on *Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003).  It is true, as Anderson asserts, that we did hold in *Foretich* that declaratory relief that would "remove the imprimatur of government authority from an [a]ct that effectively denounces Dr. Foretich as a danger to his own daughter" left open a live controversy and escaped mootness.  351 F.3d at 1215.  But the *Foretich* decision

does not carry the day for Anderson.

In that unique case, Congress had passed a bill of attainder, and we did hold that under the extreme circumstances there present, "where reputational injury derives directly from an unexpired and unretracted government action, that injury satisfies the requirements of Article III standing to challenge the action." *Id.* at 1213.[1]

However, a more full examination of the reasoning of *Foretich* discloses that "[o]ur case law makes clear that where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III." *Id.* at 1212.

Similarly in *Foretich*, we discussed *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011 (D.C. Cir. 1991). In *Penthouse International*, "because the reputational injury . . . was the lingering effect of an otherwise moot action, we distinguished cases in which the reputational injury was the 'direct effect of the legal action the government had taken.'" *Id.*

Unlike *Foretich*, in which there remained among congressionally enacted statutes essentially a declaration of guilt against an untried citizen, in the present case, as in *Penthouse International*, the alleged reputational injury is the "lingering effect of an otherwise moot action," and this case is moot.

---

[1]Though the particular quote from *Foretich* speaks in terms of standing rather than mootness, the decision taken as a whole is on point to a mootness discussion.

## CONCLUSION

For the reasons set forth above, we affirm the judgment of dismissal entered by the district court.

SRINIVASAN, *Circuit Judge*, *concurring in part and dissenting in part*: For the reasons well explained by my colleagues, appellant's claim under the Administrative Procedure Act fails because the statute precludes judicial review of "military authority exercised in the field in time of war." 5 U.S.C. § 701(b)(1)(G). That provision applies to appellant's APA claim, and I fully concur in the court's decision with regard to that claim. I believe, however, that appellant also raises a First Amendment retaliation claim, and that claim, in my view, is not moot. I therefore respectfully dissent from the court's affirmance of the dismissal of appellant's constitutional claim.

Count one of appellant's complaint, as the court observes, *ante* at 4, alleges that defendants unconstitutionally terminated his embed status in retaliation for his protected First Amendment activity. That claim might ultimately fail on the merits for a variety of reasons. But the sole question at this stage is whether the claim should be dismissed at the outset of the case. I believe it should survive dismissal and would remand it to the district court for further proceedings.

Sovereign immunity poses no obstacle to appellant's First Amendment claim. *Ante* at 5-6, 8-9. Appellant's briefing on appeal specifies that he seeks only equitable relief (not damages). And as we have explained, "[i]t is well-established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional." *Clark v. Library of Congress*, 750 F.2d 89, 102 (D.C. Cir. 1984).

To the extent my colleagues believe that appellant, based on his complaint's prayer for relief, raises only a Fifth Amendment due process claim rather than a First Amendment claim, *ante* at 8, I read the complaint differently. The complaint was drafted by a pro se plaintiff, and count one speaks in the language of a First Amendment retaliation

claim, alleging that defendants "caused the termination of [appellant's] journalist-embed status without just cause of his constitutionally protected speech." J.A. 19. Even assuming the precise language of a complaint's prayer for relief could in theory annul a claim raised in the body of the complaint, I do not understand the complaint's prayer to do so. Rather, in addition to a general plea for the grant of any relief the court deems appropriate, J.A. 23, the prayer seeks, among other things, "a declaratory judgment" that the defendants "violated the First and Fifth Amendments." J.A. 22. That language, by specifically referring to the First Amendment, reinforces the First Amendment retaliation claim raised in count one.

In my view, moreover, appellant's First Amendment retaliation claim has not been mooted by the drawdown of military operations in Afghanistan. It may have become more difficult for reporters to embed in Afghanistan, but there is no showing that it has become "impossible." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). It is true that NATO, a non-party to this case, administers the embed program; but the prior mission was *also* led by NATO, leaving it unclear—at least at this stage of the proceedings— whether the current embed requirements mark a significant change from prior procedures. Even if there is no guarantee that appellant would be reinstated if he were to prevail, "the availability of a partial remedy is sufficient to prevent [a] case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (internal quotation marks omitted). The government, which bears the burden of demonstrating mootness, has not shown that the transition to a NATO-led mission has made it impossible for the court to provide any relief bearing on a United States journalist's ability to embed.

Appellant also seeks declaratory relief. He may be able to reapply to the embed program, but the order terminating his

3

embed status remains in effect. That order "memorializes judgments" about him—namely, that he violated the ISAF Ground Rules—that inflict ongoing personal and professional harm. *Foretich v. United States*, 351 F.3d 1198, 1215 (D.C. Cir. 2003). A declaratory judgment pronouncing the defendants' actions unconstitutional could help restore appellant's reputation and status in the journalistic community, potentially affecting his ability to obtain employment. The harm appellant alleges is therefore not a "lingering effect of an otherwise moot government action," *id*. at 1213, but rather is the primary and continuing effect of an unretracted termination order. *See McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders*, 264 F.3d 52, 57 (D.C. Cir. 2001).

For those reasons, I would conclude that appellant's First Amendment retaliation claim survives dismissal and should be remanded to the district court for further proceedings.