# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 16, 2017      Decided March 20, 2018

No. 12-1342

UTILITY AIR REGULATORY GROUP,
PETITIONER

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

NATIONAL PARKS CONSERVATION ASSOCIATION, ET AL.,
INTERVENORS

Consolidated with 12-1343, 12-1344, 12-1425, 12-1480,
13-1003, 13-1045, 13-1129, 13-1178, 13-1179, 13-1180

On Petitions for Review of Final Action of the
United States Environmental Protection Agency

*Charles McPhedran* argued the cause for Conservation Group petitioners. With him on the briefs were *David S. Baron* and *Timothy D. Ballo*. *Thomas Cmar* and *Abigail M. Dillen* entered appearances.

*Norman W. Fichthorn*, *Aaron M. Flynn*, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Priscilla M. Hubenak*, Assistant Attorney General,

*Herman Robinson*, *Donald Trahan*, *Dwana King*, *Jackie Marve*, *Spencer Bowman*, *P. Stephen Gidiere, III*, *Thomas L. Casey, III*, *David W. Mitchell*, *C. Frederick Beckner, III*, *Stephanie Z. Moore*, and *Daniel J. Kelly* were on the joint briefs for State and Industry petitioners. *Courtney Burdette*, *Charlotte Goudeau*, *Peter D. Keisler*, *Elliott B. Vega*, *Mark L. Walters*, *Timothy K. Webster*, and *Kathy M. Wright* entered appearances.

*Norman L. Rave, Jr.*, Attorney, U.S. Department of Justice, argued the cause and filed the brief for respondent. *David A. Carson*, Senior Counsel, *Jessica O'Donnell* and *Martin F. McDermott*, Attorneys, entered appearances.

*Charles McPhedran* argued the cause for Conservation Group intervenor-respondents. With him on the briefs were *David S. Baron* and *Timothy D. Ballo*. *Thomas Cmar* and *Abigail M. Dillen* entered appearances.

*Norman W. Fichthorn*, *Aaron M. Flynn*, *Curtis T. Hill, Jr.*, Attorney General, Office of the Attorney General for the State of Indiana, *Thomas M. Fisher*, Solicitor General, *Margaret Claiborne Campbell*, *Hahnah Williams*, *Renee Cipriano*, *J. Michael Showalter*, *David M. Flannery*, *Kathy G. Beckett*, *Edward L. Kropp*, *P. Stephen Gidiere, III*, *Thomas L. Casey, III*, *David W. Mitchell*, *C. Frederick Beckner, III*, *Stephanie Z. Moore*, and *Daniel J. Kelly* were on the brief for State and Industry intervenor-respondents. *Peter D. Keisler*, *Byron W. Kirkpatrick*, and *Timothy K. Webster* entered appearances.

Before: GRIFFITH and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: On June 7, 2012 the Environmental Protection Agency issued another rule in a long succession of actions implementing Congress's effort to restore air quality and visibility in certain national parks and wilderness areas ("Class I areas") to what they would be under natural conditions. Regional Haze: Revisions to Provisions Governing Alternatives to Source-Specific Best Available Retrofit Technology (BART) Determinations, Limited SIP Disapprovals, and Federal Implementation Plans, 77 Fed. Reg. 33,642 (June 7, 2012) ("*Final Rule*"). In the rule, EPA took a step in the implementation of its Cross-State Air Pollution Rule, 76 Fed. Reg. 48,208 (Aug. 8, 2011) ("CSAPR") (pronounced by counsel as if the S and the A were reversed, making it approximately "CASPER"). Specifically it amended its Regional Haze Regulations and Guidelines for Best Available Retrofit Technology (BART) Determinations, 70 Fed. Reg. 39,104 (July 6, 2005) ("Regional Haze Rule"), to specify that CSAPR's requirements were stringent and effective enough for it to serve as a better-than-BART alternative for states participating in CSAPR, thus excusing states from compliance with BART itself. 40 C.F.R. § 51.308(e)(2), (e)(4). In the *Final Rule* EPA also disapproved portions of certain State Implementation Plans ("SIPs") designed to achieve reasonable progress under the Regional Haze Rule because those plans relied on a soon-to-be-defunct predecessor of CSAPR, the Clean Air Interstate Rule, 70 Fed. Reg. 25,162 (May 12, 2005) ("CAIR"). Instead, EPA promulgated Federal Implementation Plans to address haze levels in the disapproved states until those states could submit approvable SIPs that relied on CSAPR (if those states were among those eligible to rely on CSAPR) or otherwise demonstrated a local alternative better than BART. 77 Fed. Reg. at 33,653–54.

The National Parks Conservation Association and the Sierra Club ("conservation petitioners") challenge the portion

of the *Final Rule* allowing states to treat CSAPR compliance as a better-than-BART alternative. Multiple power companies and the Utility Air Regulatory Group, as well as the State of Texas and the Louisiana Department of Environmental Quality ("state and industry petitioners") challenge EPA's disapproval of SIPs relying on CAIR as a better-than-BART alternative. Except to the extent that the challenges are moot, we affirm EPA's actions.

\* \* \*

The Regional Haze Rule requires states to impose best available retrofit technology ("BART") on certain stationary pollution sources—usually electric generation plants—installed before August 1977. 40 C.F.R. §§ 51.301, 51.308(e)(1)(ii). The Rule allows states to pursue alternative approaches, including EPA-approved regional approaches to capping and trading emissions, to reduce haze if those approaches meet EPA's regulatory definition of being "better-than-BART." 40 C.F.R. § 51.308(e)(2); see *Center for Energy and Economic Development v. EPA*, 398 F.3d 653, 660 (D.C. Cir. 2005) ("*CEED*") (affirming EPA's discretion to approve regional alternatives to BART so long as the discretion is "rationally exercise[d]"). In *Utility Air Regulatory Group v. EPA*, 471 F.3d 1333, 1335 (D.C. Cir. 2006) ("*UARG I*"), we affirmed EPA's finding that states could rely on CAIR as a better-than-BART alternative against certain challenges raised by industry and environmental petitioners. But in response to a set of separate petitions by several states and electric utilities we later found "more than several fatal flaws" in CAIR itself, and because EPA had "adopted the rule as one, integral action," we vacated and remanded the rule in its entirety. *North Carolina v. EPA*, 531 F.3d 896, 901 (D.C. Cir. 2008) ("*North Carolina I*"). On rehearing, we remanded CAIR to EPA without vacatur, convinced that, "notwithstanding the relative flaws of CAIR, allowing CAIR to remain in effect until it is

replaced by a rule consistent with our opinion would at least temporarily preserve the environmental values covered by CAIR." *North Carolina v. EPA*, 550 F.3d 1176, 1178 (D.C. Cir. 2008) ("*North Carolina II*"). To replace CAIR, EPA crafted and promulgated CSAPR, a revised regional sulfur dioxide and nitrogen oxide emissions cap and trading program. 76 Fed. Reg. at 48,208. In a later rulemaking, EPA determined, as it had for CAIR, that CSAPR is an adequate better-than-BART alternative for participating states. *Final Rule*, 77 Fed. Reg. at 33,642.

We review EPA's action to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." The standard we apply is the same under the judicial review provision of the Clean Air Act, 42 U.S.C. § 7607(d)(9), as under the Administrative Procedure Act, 5 U.S.C. § 706(2). *Motor Vehicle Manufacturers Ass'n v. EPA*, 768 F.2d 385, 389 n.6 (D.C. Cir. 1985).

\* \* \*

We take the conservation petitioners' arguments first. The parties now agree that their first main challenge—that our remand invalidating certain state emissions budges in *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118 (D.C. Cir. 2015), undercut the factual basis for EPA's finding that CSAPR is better than BART—is moot. EPA has conducted a fresh analysis of the better-than-BART issue in light of *EME Homer City* and concluded that its changes to CSAPR in response to the remand do not affect its determination that CSAPR is a better-than-BART regional alternative. See 82 Fed. Reg. 45,481, 45,490–94 (Sept. 29, 2017). Although the petitioners may challenge that finding in the future, they do not challenge it here, and we do not consider it further.

The petitioners argue next that EPA should not have relied on a "generic" "presumptive BART" for modeling its comparison to CSAPR but should have determined BART for each individual source, using the five-factor analysis that states must use when they make BART determinations for a source once it has been determined to be "BART-eligible" (the term used in this field for sources *subject to* BART). See *UARG I*, 471 F.3d at 1335–36 (quoting 40 C.F.R. § 51.308(e)(1)(ii)).

A BART benchmark for purposes of calculating better-than-BART is usually based on "a determination of BART for each source subject to BART and covered by the [BART] alternative program." 40 C.F.R. § 51.308(e)(2)(i)(C). But when the alternative "has been designed to meet a requirement other than BART"—such as CSAPR's sulfur dioxide and nitrogen oxide emissions cap and trading program—then EPA or a state "may determine the [BART benchmark] based on both source-specific *and category-wide information*, as appropriate." *Id*. (emphasis added). EPA's presumptive BART is one type of category-wide information. In the rulemaking under review here EPA stated that it had adhered to the view that presumptive BART is "reasonable and appropriate for use in assessing regional emissions reductions from the BART scenario . . . since 2005," when the category-wide information rule was first promulgated. *Final Rule,* 77 Fed. Reg. 33,649–50 (citing 71 Fed. Reg. 60,612, 60,619 (Oct. 13, 2006)).

We think the attack on EPA's use of presumptive BART, authorized by 40 C.F.R. § 51.308(e)(2)(i)(C), is jurisdictionally foreclosed by the 60-day filing window provided by the Clean Air Act, 42 U.S.C. § 7607(b)(1). The conservation petitioners resist that view, arguing that EPA did not invoke that regulation, but as we have seen, it did just that in its cross-reference to 71 Fed. Reg. at 60,619, which uses the same language. Compare § 51.308(e)(2)(i)(C) (authorizing reliance on category-wide information where the alternative measure

"has been designed to meet a requirement other than BART") with 71 Fed. Reg. at 60,919 (excepting process from normal rule where "the alternative program is designed to meet requirements other than BART"). See also *WildEarth Guardians v. EPA*, 770 F.3d 919, 929–30 (10th Cir. 2014) (relying on expiration of 42 U.S.C. § 7607(b)(1)'s time bar to reject attacks on use of presumptive BART).

In a cavalcade of attacks on alleged modelling errors, the conservation petitioners fix on a comment that EPA failed to address in its response to comments, specifically an assertion that EPA's model does not take into account the remaining "useful life" of specific BART-eligible sources. Conservation Petitioners' Br. 28. As a plant nears the end of its useful life, the state and EPA may tolerate less stringent emissions standards in the short run (because the cost of compliance exceeds emissions benefits in the "best" retrofit technology scenario) in exchange for zero emissions in the long run after the plant shuts down. See, e.g., 78 Fed. Reg. 51,686, 51,690 (Aug. 21, 2013) (shutdown of one unit in 2016 and a second in 2026 justified less stringent interim BART controls); 76 Fed. Reg. 12,651, 12,660–61 (Mar. 8, 2011) (similar).

EPA does not contest that it overlooked these comments. It argues now—reasonably, in our view—that the effects of a plant's useful life are too speculative to model, and not significant enough to make any modeling a useful enterprise. We see no need to remand on this point for EPA to move this bit of post-hoc rationalization into a rulemaking record. Each petitioner mentioned useful life only within a few sentences of their combined 100 pages of comments, in both instances referring to hypothetical alternatives possibly altering the estimates of stringency in different directions. Joint Appendix 147, 179. The Administrative Procedure Act does not "require[] separate, specific rulings on *each* exception to a decision. The pertinent regulation speaks of 'significant'

objections. . . .  The agency need only state the main reasons for its decision and indicate that it has considered the most important objections." *Simpson v. Young*, 854 F.2d 1429, 1434 (D.C. Cir. 1988).  "Indeed, the agency need not respond at all to comments that are purely speculative. . . ." *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (internal quotation marks and citation omitted).

The rest of the conservation petitioners' arguments fail because they either repeat or assume premises that this Court has already rejected in *CEED* and *UARG I*.  The petitioners note that Sierra Club was not a party to *UARG I*, so that issue preclusion is not a bar to its claim.  Conservation Petitioners' Br. 37 n.2.  But the precedential value of those cases still applies.  "We are of course bound by our prior panel decision," *New York–New York, LLC v. NLRB*, 676 F.3d 193, 194–95 (D.C. Cir. 2012), and "it is not only the result but also those portions of the opinion necessary to that result by which we are bound," *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996).

The conservation petitioners urge us to require EPA to apply a more stringent better-than-BART test than the one we approved in *UARG I*.  They say that in assessing CSAPR as an alternative to BART, EPA should not have compared CSAPR on its own and BART on its own (in the relevant regions), but rather should have estimated the difference between CSAPR on its own and CSAPR and BART together.  Their reasoning is that CSAPR is implemented under a separate provision of the Clean Air Act unrelated to BART and will thus go into effect regardless of BART.  See 42 U.S.C. § 7410(a)(2)(D)(i)(I); 76 Fed. Reg. 48,216–17.  That is, the status quo for a better-than-BART alternative to improve must be a world that already includes CSAPR in operation.

This is the same argument that we rejected in *UARG I*, where we held that an emissions control program in place to satisfy an unrelated statutory provision is not disqualified from serving as a better-than-BART alternative. We thus affirmed EPA's comparison between BART-without-CAIR and CAIR-without-BART to determine the adequacy of CAIR as a BART alternative. 471 F.3d at 1341; see also 70 Fed. Reg. at 39,139. In so doing we applied our understanding (and EPA's) of the pertinent regulation, 40 C.F.R. § 51.308(e)(3). That provision requires that, where the distribution of emissions is significantly different (as between BART and the alternative), the state

> must conduct dispersion modelling to determine differences in visibility between BART and the trading program for each impacted Class I area, for the worst and best 20 percent of days. The modelling would demonstrate "greater reasonable progress" [than BART, as required by 40 C.F.R. § 51.308(e) as a condition for a state's using a better-than-BART alternative] if both of the following two criteria are met:
>
> > (i) Visibility does not decline in any Class I area, and
> >
> > (ii) There is an overall improvement in visibility, determined by comparing the average differences between BART and the alternative over all affected Class I areas.

40 C.F.R. § 51.308(e)(3). This regulation was adopted in 2005. 70 Fed. Reg. at 39,104, 39,156. To the extent that the present challenge is to the *validity* of the rule, it is now barred by the Clean Air Act's 60-day provision.

But that bar is no obstacle to a claim that EPA's *interpretation* of its regulation fails to satisfy *Auer*'s requirement of reasonableness. *Auer v. Robbins*, 519 U.S. 452, 461 (1997). Apart from any *attack* on 40 C.F.R. § 51.308(e)(3), the conservation petitioners propose that § 51.308(e)(3) can be *read* as requiring a state to show that "the [non-BART] alternative yields greater improvements in visibility in Class I areas," or, formulated slightly differently, that "a BART alternative . . . assure[s] greater visibility improvement in each and every Class I area." Conservation Petitioners' Br. 37; Conservation Petitioners' Reply Br. 23.

The difficulty with this reading is that it appears to render clause (ii) pure surplusage. If clause (i) requires modelling to show that visibility in *every* Class I area will be as good or better under CSAPR than under BART, then there would be no need to inquire whether there was an improvement measured by "the *average* differences between BART and the alternative over all affected Class I areas." If every member of a set is superior to every member of some alternative set, the average of the first set is necessarily superior to the average of the second set. Because the petitioners' proposed interpretation of 40 C.F.R. § 51.308(e)(3) falls outside any logical interpretation, petitioners' argument is in our view a claim that that regulation is invalid, and therefore beyond our jurisdiction in light of the Clean Air Act's 60-day limit on challenges to the permissibility of regulations, 42 U.S.C. § 7607(b)(1).

We should recall that the "greater reasonable progress" that § 51.308(e) requires for any state invoking a better-than-BART alternative is quite different from the statutorily required mandate of "reasonable progress" for any SIP under the regional haze statute itself, Clean Air Act § 169A(b)(2), 42 U.S.C. § 7491(b)(2). As we noted in *UARG I*, EPA has read the latter requirement to encompass a showing (excusable under limited circumstances) that complying with the BART

alternative, *as well as implementing other emission controls*, will be "sufficient to attain natural visibility conditions at every single Class I area by 2064." *UARG I*, 471 F.3d at 1340 (citing 40 C.F.R. § 51.308(d)(1)(ii)). Thus, a state meeting 40 C.F.R. § 51.308(e)'s "greater reasonable progress" criterion does not necessarily satisfy § 169A's requirement of "reasonable progress" at each Class I area. *Id*.

Finally, the conservation petitioners argue that, in comparing CSAPR and BART, EPA compared the wrong averages. Recall that clause (ii) of EPA's better-than-BART standard is "determined by comparing the average differences between BART and the alternative over all affected Class I areas." 40 C.F.R. § 51.308(e)(3)(ii). In this case, EPA considered both the average visibility improvement for all Class I areas in the modeling region subject to CSAPR, as well as the average improvement for all Class I areas nationwide. The conservation petitioners identify fourteen Class I areas nationwide where BART is modeled to outperform CSAPR on the best and worst 20 percent of days. They argue that EPA should somehow subdivide or segment its averages, thereby revealing that CSAPR is not better than BART in all places and circumstances. Again, we think this dispute is foreclosed by *UARG I*, where we both upheld EPA's regulatory standard and made clear that "nothing in [the Clean Air Act's] 'reasonable progress' language requires at least as much improvement *at each and every individual area as BART itself would achieve*." 471 F.3d at 1340 (emphasis added). It is in the nature of averages that some particular sites may underperform while others overperform. EPA's rule requires aggregate average improvement, and its comparison of the CSAPR-region Class I areas as well as all Class I areas nationwide was reasonable.

12

\* \* \*

The state and industry petitioners challenge two related aspects of EPA's action: EPA's rescission of its former rule finding participation in CAIR an adequate BART alternative and its concomitant disapproval of SIPs that relied on CAIR to meet their obligations under BART. In essence, the petitioners argue that if compliance with CAIR had for years allowed them to achieve greater reasonable progress than BART would have, their continued enforcement of emissions standards in line with the now-defunct CAIR must necessarily be found an adequate alternative to BART.

But, of course, without CAIR—which all parties agree is dead and beyond revival—there is no legal basis for a requirement that states control their sources at CAIR levels; indeed, for states that are not part of CSAPR, there is no legal basis for requiring states to participate in any haze-related interstate trading program. We cannot order EPA to consider CAIR an alternative to BART without resurrecting CAIR itself, a rule that we have already stricken and ordered to be vacated. *North Carolina I*, 531 F.3d at 901, *remanded staying vacatur after reh'g*, 550 F.3d at 1178. For this reason, EPA argues that the state and industry petitioners' challenge is moot; there is apparently no relief we can give them. See *Anderson v. Carter*, 802 F.3d 4, 10 (D.C. Cir. 2015).

The petitioners save themselves from mootness only by couching their request for relief as "a contingency." Argument Tr. 28. They argue that "if the CSAPR-for-BART rule—which NPCA and Sierra Club are challenging here—were to be vacated or rescinded, approval of the CAIR-for-BART SIPs would protect State and Industry Petitioners from the adverse effects of EPA's June 2012 actions." State & Industry Petitioners' Reply Br. 3. The petitioners seem to have in mind

CSAPR's litigation history. When CSAPR was first challenged in this Court, we stayed implementation pending a decision on the merits and ordered EPA to continue to implement CAIR. *EME Homer City Generation, L.P. v. EPA*, No. 11-1302, Order (D.C. Cir. Dec. 30, 2011). After argument on the merits, we vacated CSAPR and again ordered EPA to keep implementing CAIR. *EME Homer City Generation, L.P. v. EPA*, 696 F.3d 7, 37–38 (D.C. Cir. 2012).

But the logic of that analogy does not follow here. In *North Carolina II* we recognized that CAIR offered *some* environmental benefit, so that EPA's flawed CAIR rule was better than nothing. 550 F.3d at 1178. For that same reason we left CAIR in place while remanding CSAPR in *EME Homer City*. See 696 F.3d at 37–38. But here, CSAPR itself is not challenged, only EPA's finding that CSAPR is a better-than-BART alternative. Even if we were to grant the conservation petitioners' request, vacating CSAPR-for-BART would not restore CAIR-for-BART; it would leave BART in place alone, and CAIR-based SIPs would not become any less problematic. At any rate, because we do not grant the conservation petitioners' request, and the state and industry petitioners have hitched their wagon to that star, their contingency theory fails.

The petitioners finally argue that EPA could nevertheless approve their CAIR-based SIPs, despite CAIR's demise; EPA has in fact done so in one instance, so it must be feasible. Indeed, EPA approved Connecticut's SIP application on April 26, 2013, 79 Fed. Reg. 39,322, 39,328 (July 10, 2014),[1] even

---

[1] Although EPA signed off on Connecticut's SIP on April 26, 2013, publication in the Federal Register did not follow until July 10, 2014. See 79 Fed. Reg. at 39,329. But the Federal Register notice includes an "editor's note" stating that it did not receive the document until July 3, 2014. See *id*. At oral argument EPA explained the lapse as

after it had disapproved the petitioners' CAIR-reliant SIPs. Of course it is true that "inconsistent treatment is the hallmark of arbitrary agency action." *Catawba County v. EPA*, 571 F.3d 20, 51 (D.C. Cir. 2009). But in this case the rapidly changing legal context explains the superficially inconsistent decisions.

EPA disapproved the state petitioners' SIPs on June 7, 2012 in the final action that is challenged here. *Final Rule*, 77 Fed. Reg. at 33,653. At that time, *North Carolina I*'s reversal of CAIR had been on the books nearly four years, and *North Carolina II* had made abundantly clear that CAIR was suffered to continue only until EPA promulgated a revised cap and trading rule, at which time CAIR would be vacated. See 550 F.3d at 1178. EPA promulgated its final CSAPR rule on August 8, 2011. 76 Fed. Reg. at 48,208. By June 2012, we had stayed implementation of CSAPR while we reviewed the rule on its merits. But, apparently expecting that CSAPR would shortly be affirmed and take effect, EPA disapproved pending CAIR-based SIP applications and instructed states to submit SIPs based either on CSAPR or other non-CAIR alternatives to BART. See *Final Rule*, 77 Fed. Reg. 33,647–48. EPA may have been over-optimistic in its sense of timing, but its expectation that CSAPR would be approved and take effect was not unreasonable, and indeed was largely justified by the Supreme Court's affirmance of CSAPR, *EPA v. EME Homer City Generation, L.P.*, 134 S. Ct. 1584 (2014), subject to "as-applied" challenges to EPA's state emissions budgets alleged to constitute "over-control," *id*. at 1608–10; see also *EME Homer City*, 795 F.3d at 118 (granting some of petitioners' as-applied challenges).

---

the result of "a long dispute between the Agency and the Office of the Federal Register over something," presumably something unrelated to the SIP at issue. Argument Tr. 32.

But that Supreme Court ruling did not come until 2014. In the interim, in August 2012, we ordered EPA to continue implementing CAIR, see *EME Homer City*, 696 F.3d at 38, and on November 19, 2012, EPA issued a memo announcing that it would approve CAIR-based SIPs pending a final resolution of the CSAPR challenge. Memorandum from Gina McCarthy, Assistant Administrator, EPA, to Air Division Directors, Regions 1–10, Nov. 19, 2012, at 1–3. Connecticut's partially CAIR-based SIP was submitted in August 2012 and approved by EPA the following April. See 79 Fed. Reg. at 39,329. In sum, the difference in timing comes down to this: In June of 2012, EPA *could have* approved CAIR-based SIPs such as petitioners' but chose not to, given its not unreasonable expectation that CAIR was shortly approaching its end; in April of 2013 (and for the indefinite future while CSAPR's litigation fate remained uncertain), our direction in *EME Homer City* effectively *barred* EPA from rejecting Connecticut's CAIR-based SIP on the ground of CAIR's well-known legal infirmity. EPA suggests a variety of other factors that made its approval of Connecticut's SIP reasonable, including Connecticut's comparatively low emissions and its only partial reliance on CAIR. We need not address those factors, however. EPA's different treatments of the petitioning states and Connecticut were not unreasonable at the relevant times, and the difference certainly provides no basis for us to declare the petitioning states subject to a rule that no longer exists.

\* \* \*

Because we find no merit in the conservation petitioners' arguments and can afford no relief to the state and industry petitioners, the petitions are

*Denied*.