# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 28, 2018      Decided November 30, 2018

No. 17-5095

DAVID PULPHUS AND WILLIAM LACY CLAY, REPRESENTATIVE,
UNITED STATES HOUSE OF REPRESENTATIVES,
APPELLANTS

v.

STEPHEN T. AYERS, IN HIS OFFICIAL CAPACITY AS ARCHITECT
OF THE CAPITOL,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00310)

———

*Kymberly K. Evanson* argued the cause for appellants. With her on the briefs were *Matthew J. Segal* and *Samuel L. Feder*.

*Isaac C. Belfer* was on the brief for *amici curiae* Arts & Business Council of Greater Boston, Inc., et al. in support of appellants.

*Joshua M. Salzman*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief was *Scott R. McIntosh*, Attorney. *Marina U. Braswell* and *R. Craig*

*Lawrence*, Assistant U.S. Attorneys, and *Christopher Hair*, Special Assistant U.S. Attorney, entered appearances.

Before: GARLAND, *Chief Judge*, and ROGERS and KATSAS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Artist David Pulphus and Congressman William Lacy Clay, Jr., appeal the denial of their motion for a preliminary injunction in connection with the decision of the Architect of the Capitol to remove Pulphus' painting from the exhibition of the 2016 winners of the Congressional Art Competition. After unsuccessfully asking that the House Office Building Commission overrule the Architect's decision, the artist and the Congressman sued the Architect for violation of their First Amendment rights. They also sought a preliminary injunction directing the Architect to rehang the painting in the exhibition, which the district court denied. Because the 2016 Congressional Art Competition is over and no other concrete, redressable injury is alleged that was caused by the Architect's removal decision, we grant the Architect's motion to dismiss the appeal as moot.

**I.**

The relevant facts are undisputed. The Congressional Art Competition is designed to encourage artistic creativity by high school students.[1] Each participating Member of Congress

---

[1] *See* JERRY W. MANSFIELD, CONGRESSIONAL RESEARCH SERVICE, THE CONGRESSIONAL ARTS CAUCUS AND THE CONGRESSIONAL ART COMPETITION: HISTORY AND CURRENT PRACTICE (2013) at 4, Exhibit A to Declaration of Kymberly K. Evanson, Esq., in Support of Preliminary Injunction (Feb. 24, 2017). *See also Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013).

solicits entries from high-school students in the Member's congressional district and selects a winner for the year. The winning artwork is displayed for approximately eleven months in the Cannon Tunnel, which connects the U.S. Capitol to the Cannon House Office Building. During that time, the artwork is also displayed on the House of Representatives' website. The Congressional Institute, a non-profit organization that assists with administration of the Congressional Art Competition and hosts a reception to honor the winning artists, also maintains a searchable online catalogue of winning entries dating back to 2009.

The Architect of the Capitol is responsible for the operations and care of House Office Buildings, subject to the House Office Building Commission ("HOBC") consisting of the Speaker of the House and two Members selected by the Speaker. *See* 2 U.S.C. § 2001. The Architect also assists the House of Representatives Fine Arts Board, which may accept "works of fine art, historical objects, and similar property" for display in House Office Buildings. *See* 2 U.S.C. §§ 2121, 2122. Since the initial Congressional Art Competition in 1982, the HOBC has assigned the Architect the responsibility for reviewing whether the winning student artwork is suitable for exhibition in the Capitol buildings.[2] The Suitability Guidelines for artwork in the 2016 Competition provided, in relevant part:

> [T]he final decision regarding the suitability of all artwork for the 2016 Congressional Art Competition exhibition in the Capitol will be made by a panel of qualified persons chaired by the Architect of the Capitol. While it is not the intent to censor any

---

[2] *See* Letter from Hon. Thomas P. O'Neill, Jr., Speaker and Chairman, HOBC, to Hon. Fred Richmond, Chairman, Congressional Arts Caucus (Oct. 14, 1981).

artwork, we do wish to avoid artwork that is potentially inappropriate for display in this highly travelled area leading to the Capitol.

Artwork must adhere to the policy of the House Office Building Commission. In accordance with this policy, exhibits depicting subjects of contemporary political controversy or a sensationalistic or gruesome nature are not allowed. It is necessary that all artwork be reviewed by the panel chaired by the Architect of the Capitol and any portion not in consonance with the Commission's policy will be omitted from the exhibit.

Congressman William Lacy Clay, Jr., of the First District of Missouri, convened a panel of three local artists in April 2016 to select the winner of the 2016 Congressional Art Competition from his district. The panel unanimously selected *Untitled #1*, a painting by high-school senior David Pulphus. Congressman Clay signed the official form for the 2016 Congressional Art Competition, indicating that he had "viewed the artwork," "approve[d] of its content," and was "responsible for its content." A May 6 press release issued by his office described *Untitled #1* as "a colorful landscape of symbolic characters representing social injustice, the tragic events in Ferguson, Missouri, and the lingering elements of inequality in modern American society."[3] *Untitled #1* hung in the Cannon Tunnel exhibition alongside the winning artwork from other

---

[3] Ferguson, Missouri, is the St. Louis suburb where a white police officer fatally shot an unarmed African-American named Michael Brown in August 2014. Alex Gangitano & Rema Rahman, *Controversial Ferguson Painting Removed from Display for Third Time*, ROLL CALL (Jan. 10, 2017), https://www.rollcall.com/news/hoh/clay-puts-ferguson-police-tension-painting-back-up-in-capitol, Ex.V, Evanson Decl.

congressional districts for nearly seven months without objection.

On December 29, 2016, the Independent Journal Review published on its website an article describing *Untitled #1* as "depicting police officers as pigs with guns terrorizing a black neighborhood," and quoting criticism of the painting by Congressman Dave Reichert and a senior congressional aide. Jason Howerton, *Painting of Cops as Pigs Hung Proudly in U.S. Capitol*, INDEP. J. REV. (Dec. 29, 2016), Ex. L, Evanson Decl. A Fox News television personality urged viewers to call their representatives and ask that *Untitled #1* be removed from the Cannon Tunnel. The presidents of police unions in several major cities wrote to the House Speaker urging that the painting be taken down. Thereafter, individual Members of Congress removed the painting from the Cannon Tunnel and returned it to Congressman Clay's office on three occasions. Clay Decl. in Supp. of Prelim. Inj., ¶¶ 16, 20, 21.

On January 11, 2017, Congressman Reichert wrote the Architect of the Capitol to request "an official review" of *Untitled # 1* to determine whether it was qualified to hang in the Capitol, referencing the 2016 Suitability Guidelines. The Congressional Institute removed the painting from its website on January 14, 2017. The Architect subsequently directed his staff to remove *Untitled #1* from the Cannon Tunnel, informing Congressman Clay by letter of January 17, 2017, that he had "determined that [*Untitled # 1*] does not comply with the HOBC artwork prohibition." The Architect noted that "[t]he current exhibition will conclude in May of this year as is our custom." On the same day, Congressman Clay sought, ultimately unsuccessfully, to have the HOBC overrule the Architect's decision.

The artist and Congressman Clay sued the Architect of the Capitol on February 21, 2017, seeking declaratory and injunctive relief for violation of their First Amendment rights. They also moved for a preliminary injunction directing the Architect to reverse his decision, to rehang *Untitled #1* in the Cannon Tunnel until the expiration of the 2016 Congressional Art Competition display period or the conclusion of this litigation on the merits, whichever occurred first, and to protect *Untitled #1* from further unauthorized removal. They argued that the Congressional Art Competition is a limited public forum and that the Architect had engaged in unconstitutional viewpoint discrimination by excluding *Untitled #1* from that forum. The district court denied the motion for a preliminary injunction, ruling the artist and the Congressman were unlikely to succeed on the merits of their First Amendment claim because the Congressional Art Competition is government speech, and when the government speaks, it "is free to discriminate based on viewpoint." *Pulphus v. Ayers*, 249 F. Supp. 3d 238, 244, 247, 253–54 (D.D.C. 2017). The artist and the Congressman appeal.

**II.**

Our consideration of this appeal begins and ends with the jurisdictional objection raised by the Architect's motion to dismiss the appeal as moot in view of intervening events. Appellants sought preliminary injunctive relief for limited purposes but nonetheless respond their appeal is not moot because they suffer ongoing injuries caused by the Architect's removal of Pulphus' painting from the 2016 exhibition. Maintaining that their injuries stem from the continued exclusion of *Untitled #1* from the virtual exhibition of past Competition winners on the Congressional Institute's website, and from ongoing reputational harm, they conclude a preliminary injunction reversing the Architect's decision would provide them with at least some relief. Further, they

respond their appeal falls within the exception to mootness for controversies that are capable of repetition yet evading review.

Section 2, Article III of the U.S. Constitution provides, in relevant part, that "[t]he judicial Power shall extend to . . . Cases . . . [and] Controversies." Consequently,

> the Constitution permits federal courts to adjudicate only "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). If events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot. See, e.g., *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). This requirement applies independently to each form of relief sought, see *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 185 (2000), and "subsists through all stages of federal judicial proceedings, trial and appellate," *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990).

*McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of Judicial Conference of U.S.*, 264 F.3d 52, 55 (D.C. Cir. 2001).

This appeal is moot:

**1.** The 2016 Congressional Art Competition is over, and for that reason, *Untitled #1* can no longer be displayed in the Cannon Tunnel as appellants sought in moving for a preliminary injunction. The eleven-month exhibition period for the winners of the 2016 Congressional Art Competition ended in May 2017. A few weeks later, winning artwork from the 2016 Competition was removed from the Cannon Tunnel and replaced with the winning artwork from the 2017

Competition. In these circumstances, there is no need to protect *Untitled #1* against unauthorized removal from the Cannon Tunnel. And, the Architect adds, the winners of the 2016 Competition no longer appear on the House of Representatives' website.

**2.** With regard to the "virtual" display hosted by the Congressional Institute, appellants have not shown "a 'substantial likelihood' that the requested [preliminary] relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 771 (2000). The Congressional Institute is an independent third party that is not before the court. Although it assists in administration of the Congressional Art Competition, the Architect does not control its online display of past winners. Consequently, the Institute would not be bound by an injunction ordering the Architect to reverse his decision. *See* FED. R. CIV. P. 65(d)(2); *Microsystems Software v. Scandinavia Online AB*, 226 F.3d 35, 43 (1st Cir. 2000); 11A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 2956 (3d ed. 2013).

Further, appellants fail to show that the Congressional Institute would voluntarily return *Untitled #1* to its website if the Architect's decision were to be reversed by the court in the context of the instant appeal. Unlike the third party in *Teton Historic Aviation Foundation v. Department of Defense*, 785 F.3d 719 (D.C. Cir. 2015), which had an economic incentive to act, *see id*. at 725–28, there is no indication that the Congressional Institute would have an obvious incentive to repost *Untitled #1*. Even assuming the Institute's interest in maintaining an accurate record of past winners *might* lead it to repost *Untitled #1*, appellants have not carried their burden of showing this outcome is "very likely," *id.* at 728. After all, a preliminary injunction could be dissolved upon further litigation. *See* WRIGHT ET AL., *supra*, § 2950. Given the high-

profile controversy over *Untitled #1*, there would appear to be good reason at this point for the Congressional Institute not to repost the painting no matter how the court resolves the instant appeal.

**3.** Appellants' theory of reputational harm is also insufficient to save this appeal from being moot. Reputational harm may constitute an ongoing, redressable injury where it "derives directly from an unexpired and unretracted government action." *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003); *see also Meese v. Keene*, 481 U.S. 465, 473–74 (1987); *McBryde*, 264 F.3d at 57. In *Foretich*, *McBryde*, and *Keene*, a governmental designation directly harmed the plaintiff's professional reputation because the designation was inherently stigmatizing. In *Foretich*, Congress had "singled out" the plaintiff for legislative punishment based on allegations that he was "a child abuser and a danger to his own daughter," 351 F.3d at 1204, 1213, which "led to harassment by the media, estrangement from his neighbors, and loss of business and professional opportunities," *id.* at 1211. In *McBryde*, an "apparently upstanding federal judge" suffered reputational harm due to an official determination that he had "'engaged for a number of years in a pattern of abusive behavior' that was 'prejudicial to the effective and expeditious administration of the business of the courts,'" and from the Fifth Circuit's record of his public reprimand. 264 F.3d at 56–57 (quoting an investigative report prepared for the Judicial Council of the Fifth Circuit Court of Appeals). In *Keene*, a state senator was deterred from exhibiting three films that the Justice Department had identified as "political propaganda" under the Foreign Agents Registration Act for fear "his personal, political, and professional reputation would suffer and his ability to obtain re-election and to practice his professional could be impaired." 481 U.S. at 473.

"In this circuit, when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that 'some tangible, concrete effect' remain, susceptible to judicial correction." *McBryde*, 264 F.3d at 57 (quoting *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991)); *accord Foretich*, 351 F.3d at 1212–13. No such effect exists here.

Appellants allege that Pulphus suffers an ongoing reputational injury because he can no longer describe winning the 2016 Congressional Art Competition as an honor he has received, for example by listing it on his résumé. Compl. ¶ 73. On appeal, they maintain his injury results from the Architect's decision to "retroactively disqualify" his painting from the Competition. Appellants' Br. 13, 56–57. But the record shows that the Architect did not strip Pulphus of his status as a winner of the 2016 Congressional Art Competition; his decision was far more limited. In the January 17, 2017, letter informing Congressman Clay of his decision, the Architect stated that *Untitled #1* was removed from the 2016 exhibition because it "does not comply with the HOBC's artwork prohibition [i.e., the 2016 Suitability Guidelines]." The Architect has acknowledged that Pulphus remains the winner of the 2016 Congressional Art Competition from the First District of Missouri. *See* Appellees' Br. 25–26; Oral Arg. Tape 27:57–28:07, 28:55–29:15.

Appellants' other allegations of reputational injury do not directly result from the Architect's decision to remove *Untitled #1* from the Cannon Tunnel 2016 exhibition. Their claims of ongoing reputational harm due to being publicly labeled as "anti-police," Pulphus Suppl. Decl. ¶ 4; Clay Suppl. Decl. ¶ 11, stem from public criticism of *Untitled #1*, not the Architect's decision to remove it from the Cannon Tunnel, *see* Clay Decl. ¶ 14–17, 25, 34. Appellants acknowledge in their brief that

these attacks predated the Architect's decision. *See* Appellants' Br. 56. Similarly, Congressman Clay has not demonstrated that the diminished participation of his constituents in the 2017 Congressional Art Competition resulted directly from the Architect's removal decision rather than the public controversy surrounding the painting.

In any event, there is little reason to conclude that a preliminary injunction would redress these reputational injuries. In *Foretich*, *McBryde*, and *Keene*, the court could grant relief because the challenged government action was itself stigmatizing. Not so here. The Architect's removal decision did not brand *Untitled #1* as objectionable; it merely reflected the Architect's determination that the painting did not comply with the HOBC's prohibition in the Suitability Guidelines on exhibiting "artwork that depicts subjects of contemporary political controversy or a sensationalistic or gruesome nature." That determination is not inherently stigmatizing. Appellants' requested preliminary injunction would not change that determination for they acknowledge that *Untitled #1* in fact depicts a subject of contemporary political controversy, namely, "the treatment of African-Americans by law enforcement," Appellants' Br. 22.

**4.** Appellants' invocation of the capable-of-repetition-yet-evading-review exception to mootness, which affords the court jurisdiction to consider an otherwise moot claim, is unavailing. "This exception applies where '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.'" *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (alterations in original)). Appellants fail to meet the second requirement.

It is clear that the controversy between Pulphus and the Architect will never repeat itself. Pulphus has graduated from high school, so he is no longer eligible to enter the Congressional Art Competition. Although Congressman Clay continues to be eligible to participate as a Member of Congress, the controversy will not reoccur between the exact same parties: although the suitability requirements for student submissions remain the same, the HOBC revised the rules for the 2017 Congressional Art Competition to make itself the final decisionmaker in suitability reviews requested by a Member of Congress. *See* Ayers Suppl. Decl. ¶ 4. (June 16, 2017). Further, Congressman Clay has not demonstrated a reasonable expectation that the HOBC will find his future artwork selections unsuitable for display, for he does not suggest that he intends to select artwork that violates the Suitability Guidelines and courts generally assume that a party will abide by laws and regulations going forward, *see McBryde*, 264 F.3d at 56. Even if the Congressman were to select another piece depicting a contemporary political controversy, it appears likely that the HOBC would defer to his wishes absent the sort of public uproar that surrounded *Untitled #1*. By Congressman Clay's own account, what happened in 2016 marks the first time in the Congressional Art Competition's 35-year history that a piece of artwork has been excluded over the objection of the sponsoring Member. *See* Compl. ¶ 69–70; Clay Decl. ¶ 40; Appellants' Br. 17. That history and the fact that Congressman Clay has participated in the 2017 Congressional Art Competition without incident demonstrate the mootness exception is inapplicable.

Accordingly, the court grants the Architect's motion and dismisses this appeal from the denial of a preliminary injunction as moot.