# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Submitted November 12, 2020     Decided December 29, 2020

No. 19-7136

J. T.,
APPELLANT

v.

DISTRICT OF COLUMBIA,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-01319)

———

*Douglas Tyrka* was on the briefs for appellant.

*Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, *Loren L. Alikhan*, Solicitor General, *Caroline S. Van Zile*, Principal Deputy Solicitor General, *Carl J. Schifferle*, Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, were on the brief for appellee.

Before: HENDERSON and GARLAND[*], *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

———

[*] Judge Garland was a member of the panel at the time this case was submitted but did not participate in the final disposition of the case.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The Individuals with Disabilities Education Act (IDEA) requires that the District of Columbia Public Schools (DCPS) provide its students with disabilities a free appropriate public education (FAPE). Plaintiff J.T. asserts that DCPS failed to provide her son, V.T., with a FAPE based on his 2017 individualized education program (IEP). After the IDEA administrative hearing officer ruled against her, J.T. filed this suit in federal court. The district court dismissed J.T.'s claim as moot because the 2017 IEP no longer governed V.T.'s education and J.T. did not seek retrospective relief. *J.T. v. District of Columbia*, No. 17-cv-1319, 2019 WL 3501667 (D.D.C. Aug. 1, 2019). Because the case presents a fact-specific challenge to particular provisions in an inoperative IEP, the parties agreed to a subsequent IEP and J.T. does not seek retrospective relief, we affirm the district court.

## I.  BACKGROUND

### A.  Statutes and Regulations

The IDEA seeks to provide to children with disabilities a FAPE that "emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IEP is "the centerpiece of the [IDEA]'s education delivery system for disabled children." *Honig v. Doe*, 484 U.S. 305, 311 (1988).

At the beginning of each school year, a participating educational agency must have an IEP "in effect . . . for each child with a disability in the agency's jurisdiction." 20 U.S.C. § 1414(d)(2)(A). The IDEA requires that every IEP include "a

statement of the child's present levels of academic achievement and functional performance," describe "how the child's disability affects the child's involvement and progress in the general education curriculum," and set out "measurable annual goals, including academic and functional goals," along with a "description of how the child's progress toward meeting" those goals will be gauged. *Id.* §§ 1414(d)(1)(A)(i)(I)-(III). The IEP is prepared by a child's IEP Team, which includes teachers, school officials and the child's parents. *Id.* § 1414(d)(1)(B). The IEP Team must review and revise the child's IEP "not less frequently than annually, to determine whether the annual goals for the child are being achieved." *Id.* § 1414(d)(4)(A).

The IDEA provides a dispute resolution procedure in the event a child's parents and school officials disagree over what a child's IEP includes. Either party may file a "due process complaint" to challenge the IEP or its implementation. *Id.* §§ 1415(b)(6), (c)(2). Filing a complaint triggers a "[p]reliminary meeting" between the parties to attempt to resolve their differences and provides the option to pursue resolution through mediation. *Id.* §§ 1415(f)(1)(B)(i), (e). If these measures fail to produce accord, the parties may proceed to what the IDEA calls a "due process hearing" before a state or local educational agency. *Id.* § 1415(f)(1)(A). The administrative hearing process requires that the hearing officer's decision "be made on substantive grounds based on a determination of whether the child received a [FAPE]." *Id.* § 1415(f)(3)(E)(i).

If the hearing officer finds a violation, the hearing officer can grant relief including (i) retroactive reimbursement for private school tuition, (ii) an order that the school district provide a FAPE or (iii) compensatory education to make up for educational services that the child should have received. *See Sch. Comm. of Burlington, Mass. v. Dep't of Educ. of Mass.,*

471 U.S. 359, 370 (1985) (prospective relief and retroactive reimbursement); *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005) (compensatory education). At the conclusion of the administrative process, "any party aggrieved" may seek redress in state or federal court. 20 U.S.C. §§ 1415(i)(1), (i)(2)(A).

## B.   Facts and Procedure

V.T. is a fifth-grade student who has been diagnosed with Autism Spectrum Disorder. V.T. attended Kingsbury, a nonpublic day school in the District, for the 2016–17 and 2017–18 school years. The IEP at issue was drafted in April and May 2017 (2017 IEP) when V.T. was completing the first grade.

The 2017 IEP was drafted after the resolution of a due process complaint brought by V.T.'s parents. This earlier complaint, filed on October 31, 2016, challenged an IEP drafted in August 2016 (2016 IEP), at the start of V.T.'s first-grade school year. On April 3, 2017, a hearing officer determined that the 2016 IEP denied V.T. a FAPE. J.A. 228 (April 3, 2017 Hearing Officer Determination (HOD)). The hearing officer instructed that:

> Within 15 school days, DCPS shall convene an IEP meeting (including Parents) and review and revise [V.T.'s] IEP, by (a) increasing [his] O[ccupational] T[herapy] and Speech Language services, (b) providing a specified minimum amount of 1:1 instruction, (c) providing a maximum student-teacher ratio, (d) defining a quiet instructional environment, and

(e) providing a maximum class size and other necessary aspects of a school environment.

J.A. 238.

On April 27, 2017, an IEP meeting was held to amend the 2016 IEP consistent with the HOD's requirements. Although DCPS attempted to observe V.T. at Kingsbury before the IEP amendment meeting to "ascertain the level of restriction [he] actually needed in light of the directives in the [April] HOD[,] DCPS was not permitted to observe" him. J.A. 323–24 (November 27, 2017 HOD, at 5 ¶ 5). At the April 27, 2017 IEP meeting, the parties agreed to increase V.T.'s occupational therapy and speech-language services and include two hours per day of one-on-one instruction.

But the parties disagreed on the maximum class size, ratio of students-to-adults and the definition of a quiet instructional environment. For example, DCPS proposed a maximum class size of eight students and a student-to-adult ratio of four-to-one. On the other hand, J.T. requested, based on consultation with personnel at Kingsbury, a class size of four students and a student-to-adult ratio of two-to-one. The April 2017 IEP meeting concluded with DCPS disagreeing with J.T.'s proposals but stating it was open to making further changes when the IEP was reviewed in August 2017 and after DCPS observed V.T.

The 2017 IEP set a maximum class size of eight students and a four-to-one ratio of students-to-adults. It also required V.T.'s instruction and independent work time to be in "a quiet area of the classroom" with "minimal risk of noise and distraction from outside of the classroom" and adults "speak[ing] in low, calm tones." J.A. 244 (2017 IEP).

On July 6, 2017, J.T. filed a due process complaint alleging that the 2017 IEP was "inappropriate" because it lacked the provisions she had requested, thus denying V.T. a FAPE. *See* J.A. 131–35. J.T. requested (i) that DCPS "be found to have denied [V.T.] a FAPE by developing an inappropriate IEP," (ii) that DCPS place and fund V.T. at Kingsbury and (iii) that DCPS be ordered to "convene an IEP meeting with the parents, and at that meeting to review and revise the IEP to include the parents' requested changes." J.A. 134.

An administrative hearing was held on October 13, 2017 and November 6, 2017. By that time, DCPS had agreed to fund V.T. at Kingsbury for the 2017–18 school year and therefore J.T. no longer sought tuition reimbursement. On November 27, 2017, the hearing officer determined that the 2017 IEP provided V.T. with a FAPE.

In July 2018, the IEP Team met and developed a new IEP (2018 IEP). The 2018 IEP set the maximum class size at six and removed the student-to-adult ratio. The 2018 IEP made these changes because "[V.T.] was able to tolerate more from a sensory perspective this [past] year" and his teacher reported that V.T. had been successful in a group of five. J.A. 24. The 2018 IEP also provided V.T. with a dedicated aide for six hours a day.

Five months before the parties reached agreement on the 2018 IEP, on February 23, 2018, J.T. filed suit challenging the hearing officer's November 27, 2017 determination that the 2017 IEP provided V.T. with a FAPE. The complaint sought a declaration that DCPS "violated the IDEA and denied her son V.T. a [FAPE] . . . by failing to develop an appropriate [IEP]" and an order requiring DCPS to "make the specific changes to V.T.'s IEP requested by J.T." J.A. 13. The complaint did not

seek retrospective relief—neither tuition reimbursement nor compensatory education.

The parties filed cross-motions for summary judgment, which were referred to a magistrate judge. On June 11, 2019, the magistrate judge issued a report and recommendation (R&R) that, in relevant part, recommended J.T.'s challenge to the 2017 IEP was moot. The magistrate judge also recommended that in the event J.T.'s challenge to the 2017 IEP was not moot, it failed on the merits. J.T. objected to the R&R on both mootness and the merits.

On August 1, 2019, the district court concluded that "J.T.'s claim regarding the November 2017 HOD is moot because the challenged 2017 IEP already has been modified and no claim for compensatory education has been made." *J.T. v. District of Columbia*, 2019 WL 3501667, at *2. First, the district court found that neither of the two forms of relief J.T. sought "would be effectual as the 2017 IEP no longer governs V.T.'s education." *Id.* at *4. Specifically,

> the adequacy of the 2017 IEP is irrelevant because, as J.T. notes in her objections to the R&R, V.T. has advanced since the 2017–18 school year. . . . Irrespective of whether J.T. is right about the 2017 IEP, V.T. is not at the same level he was two years ago and declaring what accommodations V.T. needed then has no value now.

*Id.* Second, the district court concluded that the voluntary cessation exception to mootness did not apply because "DCPS did not cease enforcing the 2017 IEP due to litigation, but rather because of its annual obligation to reevaluate V.T.'s educational needs." *Id.*

Third, the district court concluded that J.T.'s challenge to the 2017 IEP did not fall within the capable of repetition but evading review exception to mootness. *Id.* at \*5–6. Although the district court acknowledged that "conduct challenged under the IDEA may present a legal issue capable of repetition," the IDEA cases J.T. cited "involved a legal question that transcended the specific facts which prompted the case." *Id.* at \*5. In contrast, the district court concluded, fact-dependent claims based on specific alleged deficiencies in an IEP—like J.T.'s challenge to the 2017 IEP—did not fall within the mootness exception for issues capable of repetition, yet likely to evade review. *Id.* at \*5–6.

J.T. then moved to alter or amend the judgment, raising allegedly new evidence from an IEP Team meeting held to draft a 2019 IEP. On September 26, 2019, the district court denied J.T.'s motion, concluding that:

> J.T.'s motion overlooks a critical factor in the Court's prior decision: V.T., by the plaintiff's own account, is not the same student he was in 2017. Nothing the Court says about whether the 2017 IEP adequately met V.T.'s needs at the time will benefit the plaintiff as V.T.'s needs now are different than they were then.

*J.T. v. District of Columbia*, No. 17-cv-1319, slip op. at 3 (D.D.C. Sept. 26, 2019). J.T. timely appealed the denial of her motion to alter or amend the judgment.

## II. ANALYSIS

We review *de novo* a district court's dismissal for lack of subject matter jurisdiction based on mootness. *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014). This case is moot and does not fall within an exception to mootness

because (1) J.T.'s challenge is a fact-specific challenge to particular provisions in the no-longer operative 2017 IEP, (2) the 2017 IEP was replaced with a 2018 IEP to which all parties agreed and (3) J.T. does not seek retrospective relief stemming from the alleged deficiencies in the 2017 IEP. Accordingly, we affirm the district court.

## A. Mootness

"Article III, Section 2 of the Constitution permits federal courts to adjudicate only actual, ongoing controversies." *McBryde v. Comm. to Review Circuit Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001) (internal quotations omitted). Accordingly, the mootness doctrine prohibits us from deciding a case if "events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc) (internal quotations omitted).

Here, no effective remedy for J.T.'s claim is available because V.T.'s IEP was revised in July 2018 and thus the 2017 IEP has no operative force. "Critically, J.T. has not sought retrospective relief for the year that V.T. was educated pursuant to the 2017 IEP because DCPS funded V.T.'s education for the 2017–18 school year at Kingsbury, which provided V.T. the educational accommodations that his parents had advocated be included in the 2017 IEP." *J.T. v. District of Columbia*, 2019 WL 3501667, at *4 (citations omitted).[1] Instead, J.T. seeks only

---

[1] Notably, J.T. admitted in district court that no injury resulted from the 2017 IEP she challenges. *See* Pl.'s Objs. to R&R at 11 n.5, *J.T. v. District of Columbia*, No. 17-cv-1319 (D.D.C. Aug. 1, 2019) ("V.T. was never educated with the lesser accommodations in the 2017 IEP . . . [and that] is why J.T. brought no compensatory education claim.").

(1) a declaration that the 2017 IEP was inadequate and (2) an order that DCPS change the 2017 IEP in accordance with J.T.'s specific requests. Neither of these forms of relief "would be effectual as the 2017 IEP no longer governs V.T.'s education." *Id.*

Seeking to avoid this conclusion, J.T. argues that a declaratory judgment "will still provide effectual relief to J.T." because "[p]rior IEPs help establish a baseline for the development of future IEPs." Appellant Br. 16. But where, as here, a plaintiff "merely attacks an isolated agency action, then the mooting of the specific claim moots any claim for a declaratory judgment that the specific action was unlawful," unless an exception to mootness applies. *City of Houston v. HUD*, 24 F.3d 1421, 1429 (D.C. Cir. 1994). Moreover, the 2017 IEP at issue cannot serve as the baseline for future IEP negotiations because it has already been replaced by a subsequent IEP. Specifically, the 2018 IEP replaced the 2017 IEP and all parties agreed to the 2018 IEP. J.T. provides no legal authority to support her argument that a several-years-old IEP can be used as a baseline for future IEP negotiations. Rather, the statutory provision she cites contemplates only that the *current* IEP will be reviewed and "revise[d] . . . as appropriate." 20 U.S.C. § 1414(d)(4)(A)(ii); *see M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 67 (2d Cir. 2000) ("Since the IDEA requires a child's IEP Team to formulate a new IEP at least every year, . . . the adequacy *vel non* of an IEP . . . is to be judged on its own terms." (internal citation omitted)). Because the 2017 IEP has been replaced, a declaratory judgment on its adequacy would provide no effectual relief.

Accordingly, J.T.'s challenge to the 2017 IEP is moot. The only question that remains is whether an exception to mootness applies.

### B. Voluntary Cessation Exception to Mootness

J.T. first argues that her claim fits within the voluntary cessation exception to mootness because "DCPS voluntarily changed V.T.'s accommodations in a later IEP." Appellant Br. 19. But DCPS did not voluntarily cease the challenged conduct; the 2017 IEP expired due to the end of the 2016–17 school year. Thus, the voluntary cessation exception to mootness does not apply.

We have held that "[t]he voluntary-cessation doctrine has no apparent relevance" where the "source of 'cessation' . . . lies beyond the unilateral legal authority of any of the named defendants." *Guedes v. ATF*, 920 F.3d 1, 15 (D.C. Cir. 2019) (per curiam). As noted, the IDEA requires a child's IEP Team to formulate a new IEP at least every year. *See* 20 U.S.C. § 1414(d)(4)(A)(i). Thus, the 2017 IEP did not expire because of DCPS's conduct but because the 2016–17 school year ended. *See Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc) ("[N]on-reenactment of a one-time condition that expired of its own terms cannot be viewed as cessation of conduct. . . . [T]he expiration date of the [challenged action] was set well before this dispute arose."). Accordingly, the voluntary cessation doctrine has no applicability where, as here, the challenged IEP has been replaced by a new IEP and the parties have agreed to the terms in the new IEP.

### C. Capable of Repetition but Evading Review Exception to Mootness

J.T. also argues that the case is not moot because the capable of repetition but evading review exception to mootness applies. Although J.T.'s claim meets the evading review prong, it fails to meet the capable of repetition prong because the

challenge focuses on a fact-specific inquiry rather than a recurring legal question.

The capable of repetition but evading review exception applies if "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam); *see also S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (announcing exception). The party invoking the exception bears the burden to show that both elements are satisfied. *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009).

We examine the "evading review" prong first. "To evade review, the challenged action must be incapable of surviving long enough to undergo Supreme Court review." *United Bhd. of Carpenters & Joiners of Am. v. Operative Plasterers' & Cement Masons' Int'l Ass'n of the U.S. & Can.*, 721 F.3d 678, 688 (D.C. Cir. 2013). We have held that "there can be no doubt that a one-year placement order under the IDEA is, by its nature, 'too short [in duration] to be fully litigated prior to its . . . expiration.'" *Jenkins v. Squillacote*, 935 F.2d 303, 307 (D.C. Cir. 1991) (quoting *Honig v. Doe*, 484 U.S. 305, 333 (1988) (Scalia, J., dissenting)) (alteration in original). Accordingly, J.T.'s challenge to the 2017 IEP meets the "evading review" prong because the 2017 IEP had a maximum shelf-life of fewer than four months, that is, from May 3 to August 23.

Whether the dispute is "capable of repetition" is a closer question. "This prong requires that the same parties will engage in litigation over the same issues in the future." *Pharmachemie B.V. v. Barr Labs., Inc.*, 276 F.3d 627, 633 (D.C. Cir. 2002).

The party invoking the exception must show "a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the[] two parties." *Id.* (internal quotations omitted) (alteration adopted). The relevant inquiry, however, is not "whether the precise historical facts that spawned the plaintiff's claims are likely to recur." *Del Monte*, 570 F.3d at 324. Rather, "[t]he 'wrong' that is, or is not, 'capable of repetition' must be defined in terms of the precise controversy it spawns," to wit, "in terms of the legal questions it presents for decision." *PETA v. Gittens*, 396 F.3d 416, 422–23 (D.C. Cir. 2005).

To determine the precise nature of the alleged wrong, "we must initially look to [J.T.'s] complaint." *Gittens*, 396 F.3d at 423. The complaint alleges that: "On May 3, 2017, DCPS developed an 'Amended [IEP]' for V.T., which IEP is inappropriate for the following reasons":

    a.  it prescribes too large a class;
    b.  it prescribes too high a student/adult classroom ratio;
    c.  it does not prescribe a quiet classroom;
    d.  it does not appropriately limit classroom noise;
    e.  it allows for very noisy fellow students in the classroom;
    f.  it does not appropriately limit group sizes outside of the classroom;
    g.  it does not appropriately limit the business [sic] of hallways;
    h.  it does not prescribe that the student will attend all specials with the same small group as his academic class;
    i.  it does not prescribe teacher supervision of lunch;

j. it does not prescribe a location for instruction and services.

J.A. 12 (¶ 17) (alteration in original). Plainly, J.T.'s challenge to the 2017 IEP is fact-specific.

As we have made clear, "a 'legal controversy so sharply focused on a unique factual context' w[ill] rarely present 'a reasonable expectation that the same complaining party would be subjected to the same actions again.'" *Gittens*, 396 F.3d at 424 (quoting *Spivey v. Barry*, 665 F.2d 1222, 1234–35 (D.C. Cir. 1981)). Importantly, if we were to decide now whether the 2017 IEP provided V.T. with a FAPE in 2017, the decision would *not* determine whether an IEP provides V.T. with a FAPE today or in the future.

This conclusion necessarily follows from the IDEA's requirement that every IEP include "a statement of the child's *present* levels of academic achievement and functional performance" and set out "measurable *annual* goals, including academic and functional goals." 20 U.S.C. §§ 1414(d)(1)(A)(i)(I)-(III) (emphases added); *see also Branham v. District of Columbia.*, 427 F.3d 7, 12 (D.C. Cir. 2005) ("[D]etermining what constitutes a FAPE will always require a fact-intensive and child-specific inquiry."). Indeed, J.T. has acknowledged that "[t]o the degree that the 2018 IEP does not include changes [J.T.] originally sought in the 2017 IEP, it is because V.T. had developed during the 2017–18 school year such that he no longer needed those accommodations." *See* Pl.'s Objs. to R&R at 23–24, *J.T. v. District of Columbia*, No. 17-cv-1319 (D.D.C. Aug. 1, 2019). Thus, if a specific issue like class size were to recur, as it apparently did in the 2019 IEP,[2] it would arise in a materially

---

[2] *See* Reply Br. 9 & n.6. The 2019 IEP prescribed a class size of six to nine students. J.T. argued for a maximum class size of four

different factual context from that presented in the 2017 IEP.[3] Accordingly, the precise controversy alleged in J.T.'s complaint—specific deficiencies in the inoperative 2017 IEP—does not present the type of recurring legal question the capable of repetition but evading review exception to mootness was designed to permit.

The Tenth and Seventh Circuits have concluded that similar fact-specific IEP challenges do not fall within the capable of repetition but evading review exception to mootness. *See Nathan M. ex rel. Amanda M. v. Harrison Sch. Dist. No. 2*, 942 F.3d 1034, 1041–46 (10th Cir. 2019); *Brown v. Bartholomew Consol. Sch. Corp.*, 442 F.3d 588, 598–600 (7th Cir. 2006). In *Nathan M.*, the Tenth Circuit concluded that a parent's five alleged IDEA violations related to the child's 2016 IEP were moot. *Nathan M.*, 942 F.3d at 1044–45. By the time the case reached the Tenth Circuit, a 2019 IEP that included provisions different from those in the 2016 IEP governed the child's education. *Id.* at 1045. In concluding that the case was moot, the Tenth Circuit found that "[n]othing in [the parent's] briefing hints at a '*precise controversy*' presenting 'legal questions' for our decision." *Id.* at 1046 (quoting *Gittens*, 396 F.3d at 422–23). Instead, the Tenth Circuit found the parents' challenges suffered from "fatal vagueness" and were "fact-specific disagreement[s] unlikely to recur in a recognizable form in a future IEP." *Id.* at 1045. Accordingly, the Tenth Circuit found that, if it decided the

students, the same position taken by J.T. in the 2017 IEP discussions. *See id.* The 2017 IEP set a maximum class size of eight students. J.A. 244. And the 2018 IEP, to which all parties agreed, set a maximum class size of six students. J.A. 24.

[3] For example, V.T.'s 2018 IEP and 2019 IEP include a designated aide for V.T. for six hours a day, which affects whether additional children in the classroom would impede V.T.'s academic progress.

parent's challenge, it would be issuing an advisory opinion that "would tell the parties who was right about [the child's] 2016 IEP, but nothing more, thus failing to ensure that future repetitions of the alleged injury could be avoided." *Id.* at 1046 (internal quotations omitted) (alteration adopted). The same conclusion follows in this case.

Similarly, the Seventh Circuit in *Brown* addressed a challenge to the appropriateness of an IEP. *Brown*, 442 F.3d at 590. By the time the challenge reached the Seventh Circuit, the parents had agreed to a new IEP for the upcoming school year. *Id.* at 590, 596. In determining whether a reasonable expectation existed that, in the future, the educational agency would again subject the child to an IEP that allegedly denied him a FAPE, the Seventh Circuit concluded:

> What was right for [the child] in kindergarten may not be the proper educational program when he enters the third grade. The dispute over the 2002–2003 IEP turned on whether [he] was ready for full-time mainstream class. Now, as a nine-year old, [his] readiness for mainstream education presents a different question calling for reassessment of his educational development. Were we to decide, at this later date, whether mainstreaming was right for [him] back in 2002–2003, we would be issuing, in effect, an advisory opinion. Our decision would merely tell the parties who was correct about [his] outdated IEP. It would do nothing to define the contours of the parties' continuing legal relationship under the IDEA such that future repetitions of the injury could be avoided. The case therefore must be dismissed as moot.

*Id.* at 599–600. *Nathan M.* and *Brown* provide persuasive support for the conclusion reached here—J.T.'s fact-specific challenge to the 2017 IEP does not satisfy the exception's capable of repetition prong.

Although J.T. cites United States Supreme Court and D.C. Circuit cases that have held that conduct challenged under the IDEA may present a legal issue capable of repetition, those cases are inapposite. Those cases involved a legal question that had broader implications for the parties. For example, in *Honig*, the Supreme Court addressed whether a school district's policy of unilaterally changing a student's placement because of behavior growing out of the student's disability violated the IDEA's stay-put provision, 20 U.S.C. § 1415(e)(3). *Honig v. Doe*, 484 U.S. 305, 318–23 (1988). The legal question presented in *Honig*, therefore, was whether a "dangerousness" exception should be read into the unequivocal stay-put mandate in § 1415(e)(3). *Id.* at 323. This legal question is meaningfully different from the question J.T. asks us—whether the 2017 IEP should have included her requested provisions.

Our IDEA cases are similarly inapposite. In *Jenkins*, we held that "the degree of specificity required of the District in providing notice to parents under the IDEA is . . . . reasonably likely to be a recurring legal question with respect to the District's educational plans for the very pupil whose parents are now before this court." *Jenkins*, 935 F.2d at 308. There, the "case [wa]s not simply about where [the child] would attend school for the [particular] school year, but rather about what sort of legal standard the District must meet in providing notice to [his] parents, and to other parents as well." *Id.* at 306. Similarly, in *District of Columbia v. Doe*, we concluded that "the legal issue—an IDEA hearing officer's authority to revise DCPS-imposed discipline upon finding that an infraction is not a manifestation of a disability—is almost certain to be 'a

recurring one.'" *District of Columbia v. Doe*, 611 F.3d 888, 895 (D.C. Cir. 2010) (quoting *Jenkins*, 935 F.2d at 308). And in *Abney*, we found that whether, by statute, the parent must be notified of certain decisions involving her son was a recurring legal issue where DCPS "seemed indifferent to [the child's] education." *Abney ex rel. Kantor v. District of Columbia*, 849 F.2d 1491, 1495–96 (D.C. Cir. 1988). Our "capable of repetition" precedent in the IDEA context thus authorizes the review of recurring legal questions arising from the statute. In contrast, J.T.'s challenge is based on the fact-specific provisions of her son's 2017 IEP.

Seeking to avoid the conclusion that this IDEA challenge does not present a recurring legal issue, J.T. offers three issues she argues are likely to recur: (1) the IDEA hearing officer misapplied the burden of proof in the administrative hearing and that injury is likely to recur; (2) DCPS's development of an IEP "that contradicts the recommendations of [V.T.'s] providers in key areas, without any basis for those discrepancies," is likely to recur; and (3) the dispute over the maximum class size in V.T.'s IEP is likely to recur and did recur in the 2019 IEP. Appellant Br. 26.

The first two issues were not raised in the complaint. Our precedent mandates that the assertion of broader injuries than those alleged in a complaint meet with skepticism in evaluating mootness, if they are considered at all. *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc) ("[W]here plaintiffs are resisting a mootness claim we think they must be estopped to assert a broader notion of their injury than the one on which they originally sought relief."). Granted, J.T. made the burden of proof and IEP development arguments in her summary judgment brief in district court before the magistrate judge's *sua sponte* mention of mootness. Even if we were to consider the two arguments, however, the same conclusion

follows—in this case, they do not present legal questions capable of repetition.

Specifically, a key constraint in the 2017 IEP process (which the hearing officer identified) was that "DCPS was not permitted to observe" V.T. at Kingsbury. J.A. 323–24 (November 27, 2017 HOD, at 5 ¶ 5). The lack of observation was central to both issues. The crux of the first issue was that, because of the lack of observation, DCPS had little direct evidence that the accommodations J.T. requested were more restrictive than necessary. In J.T.'s view, the hearing officer was required to side with the parents under the circumstances. The second issue is similar. J.T. argues that, because DCPS had not observed V.T. in a classroom, it was required to include J.T.'s and Kingsbury's recommended terms in the IEP.

Subsequent events make clear that this fact-specific situation is unlikely to recur. DCPS observed V.T. at Kingsbury twice in December 2017 and all parties agreed to the 2018 IEP based in part on the data from those DCPS observations.[4] Magistrate Judge R&R at 45–47, *J.T. v. District of Columbia*, No. 17-cv-1319 (D.D.C. June 11, 2019). Moreover, J.T.'s burden of proof argument is highly dependent on the specific evidence before the hearing officer in 2017. J.T.'s IEP development argument is similarly dependent on a specific set of facts. Simply put, resolving these two issues would "do nothing to define the contours of the parties' continuing legal relationship under the IDEA." *Brown*, 442 F.3d at 599–600. Accordingly, neither the challenge to the IEP's development process nor the challenge to the hearing

---

[4] DCPS has received additional information pertinent to V.T.'s educational needs since 2017, including a comprehensive psychological evaluation completed in 2019. Appellee Br. 6 n.3, 36.

officer's application of the burden of proof presents a recurring legal question capable of repetition.

The third issue—the appropriate maximum class size for V.T.—is the only purportedly repetitive issue alleged in J.T.'s complaint. The appropriate maximum class size is plainly a factual question, the answer to which is likely to change both (i) over time in response to V.T.'s development and (ii) in response to other changes in V.T.'s IEP (*e.g.*, providing a dedicated aide to V.T.). Accordingly, this dispute is not the type of legal question that is capable of repetition as it is "sharply focused on a unique factual context." *Gittens*, 396 F.3d at 424 (internal quotations omitted).

For the foregoing reasons, the district court's judgment of dismissal is affirmed.

*So ordered.*