# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 22, 2021          Decided June 11, 2021

No. 20-1369

SECRETARY OF LABOR, MINE SAFETY AND HEALTH
ADMINISTRATION,
PETITIONER

v.

M-CLASS MINING, LLC AND FEDERAL MINE SAFETY AND
HEALTH REVIEW COMMISSION,
RESPONDENTS

On Petition for Review of an Order of the
Federal Mine Safety and Health Review Commission

*Susannah M. Maltz*, Attorney, U.S. Department of Labor, argued the cause for petitioner. With her on the briefs were *Emily Toler Scott*, Acting Counsel for Appellate Litigation, and *Archith Ramkumar*, Counsel for Appellate Litigation.

*Justin K. Chandler* argued the cause for respondent M-Class Mining, LLC. With him on the briefs was *Christopher D. Pence*.

Before: HENDERSON and ROGERS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

2

KAREN LECRAFT HENDERSON, *Circuit Judge*: The United States Secretary of Labor (Secretary) petitions for review of its Federal Mine Safety and Health Review Commission's (Commission or FMSHRC) vacatur of an order (Order) issued pursuant to section 103(k) of the Federal Mine Safety and Health Act of 1977 (Mine Act), 30 U.S.C. §§ 801 *et seq*.[1] After a miner fell ill at one of M-Class Mining's (M-Class) mines and a doctor attributed the miner's illness to carbon monoxide (CO) poisoning, a Mine Safety and Health Administration (MSHA) inspector issued the Order to close part of the mine for an investigation. After a few hours of investigation, the MSHA Inspector allowed mine operations to resume and subsequently limited the Order to a single piece of equipment. MSHA eventually terminated the modified Order but M-Class still sought vacatur, arguing MSHA had erroneously issued the Order. After an administrative law judge (ALJ) upheld the Order, the Commission vacated it, concluding substantial evidence—including information MSHA did not know at the time the Order issued—did not support a finding that an accident had occurred. Because the case is moot, we dismiss the petition, vacate the Commission decision and the Order consistent with *Tennessee Gas Pipeline Co. v. Federal Power Commission*, 606 F.2d 1373 (D.C. Cir. 1979) and *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324

---

[1] As we have explained in the past, although the Mine Act is codified at 30 U.S.C. §§ 801 *et seq.* and our citations are to the U.S. Code, we use the Mine Act's numbering to refer to its various provisions. *Performance Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 642 F.3d 234, 236 n.1 (D.C. Cir. 2011). "We note, however, that the Mine Act references and their U.S. Code counterparts are readily interchangeable because Mine Act provisions are numbered § 10X and U.S. Code sections are numbered § 81X, with the 'X' being the same in both versions. For example, § 103(k) in the Mine Act correlates to § 813(k) in the U.S. Code." *Id.*

(1961), and remand for proceedings consistent with this opinion.

## I. BACKGROUND

M-Class operates an underground coal mine in Macedonia, Illinois. During operations to repair a gap in the mine roof, one miner experienced dizziness and a light headache that progressed into chest pains and difficulty breathing. The miner was removed from the mine and taken to a local hospital, where a physician examined him. Shortly thereafter, the physician notified the police that a miner was suffering from CO poisoning and recommended that the mine be shut down. The police called the MSHA hotline and relayed the physician's diagnosis and recommendation, which the MSHA hotline employees used to draft an escalation report.[2] The report was then sent to the local MSHA office. After receiving the escalation report, the local MSHA office supervisor notified a senior M-Class official at the mine and—although the M-Class official told the MSHA supervisor that he had been working in the same area that day and that his personal gas spotter[3] did not detect any elevated CO level—sent a MSHA inspector to investigate.

After reviewing the escalation report, the MSHA Inspector arrived at the mine that night. Based on the report, he issued the Order under section 103(k) of the Mine Act to suspend operations in the affected area of the mine. Section 103(k) of the Mine Act provides that "[i]n the event of any accident occurring in a . . . mine, an authorized representative of the

---

[2] An escalation report summarizes the information provided by a caller to the MSHA hotline.

[3] A personal gas spotter is a device that records CO levels. Combined with a system that tracks a miner's location within the mine, his location during each recorded CO level can be identified.

Secretary, when present, may issue such orders as he deems appropriate to insure the safety of any person in the . . . mine." 30 U.S.C. § 813(k). Before entering the mine, the MSHA Inspector reviewed a report based on the mine's gas detectors as well as data from one miner's personal gas spotter—both of which indicated no elevated CO level. Approximately one hour after issuing the Order, the MSHA Inspector entered the mine and detected no elevated CO level. He then modified the Order to allow mining operations to resume in the suspended area. All told, mine operations in the area stopped for about 2.5 hours total. The MSHA Inspector also started the diesel air compressor—a piece of equipment that had been running in the vicinity of the ill miner—and detected no elevated CO level from that device at that time. Returning to the mine a day later, the MSHA Inspector modified the Order to remove the diesel air compressor from service pending an investigation because it was the only variable the ill miner had not been regularly exposed to. The MSHA Inspector interviewed the ill miner and other miners who worked with him but did not uncover evidence of any elevated CO level.

MSHA examined and tested the diesel air compressor over the next six weeks but ultimately found no evidence that it was the source of the miner's illness. During this period, MSHA initially insisted that M-Class submit an action plan governing diesel air compressor use in the mine before the Order would be terminated. After MSHA rejected M-Class's submission and the parties could not agree on a plan, M-Class filed a notice of contest and moved for an expedited hearing before an ALJ. The ALJ shortly thereafter denied M-Class's expedition motion and a few days later MSHA terminated the Order. Approximately two and one-half months after terminating the Order, the Secretary moved to dismiss the case for lack of jurisdiction and mootness because the Order had been terminated. The ALJ denied the motion, concluding his

jurisdiction continued and the case was not moot. After a hearing, the ALJ concluded "the Secretary ha[d] proven by a preponderance of the evidence that an accident [had] occurred and that the [terminated] Order was appropriate to ensure the safety of other miners until the investigation . . . was completed." *M-Class Mining, LLC v. Sec'y of Labor*, 41 FMSHRC 1, 10 (2019) (ALJ). M-Class timely petitioned the Commission for review of the ALJ's decision. In a 3–2 decision, the Commission affirmed the ALJ in part and reversed in part. The Commission majority concluded that the case was not moot but vacated the terminated Order because it determined substantial evidence did not support MSHA's finding that an accident occurred.[4] The Secretary timely petitioned for review of the Commission decision.

## II. ANALYSIS

We have jurisdiction to review the Commission decision under 30 U.S.C. § 816(b). We review the Commission's legal conclusions *de novo*, *Sec'y of Labor v. Twentymile Coal Co.*, 456 F.3d 151, 156 (D.C. Cir. 2006), and the Commission's factual findings under the substantial evidence standard, "meaning that we determine whether there is such relevant evidence as a reasonable mind might accept as adequate to support the judge's conclusion," *Am. Coal Co. v. Fed. Mine Safety & Health Rev. Comm'n*, 796 F.3d 18, 23 (D.C. Cir. 2015) (internal quotations omitted). The case presents three

---

[4] A fourth member, Commissioner Jordan, dissented because she concluded the case was moot and did not satisfy the "capable of repetition but evading review" exception. A fifth member, Commissioner Traynor, concurred in part and dissented in part, concluding that the case met the "capable of repetition but evading review" exception and therefore could be reviewed but that the Order should have been affirmed because MSHA did not abuse its discretion in issuing the Order.

issues: (i) whether the case is moot and, if so, whether the "capable of repetition but evading review" exception applies; (ii) how MSHA's decision to issue the Order should be reviewed and (iii) whether the Order was properly issued.[5] We begin our analysis with the first issue and, accordingly, assess whether the case is moot and, if so, whether the "capable of repetition but evading review" exception applies. As the case is moot and the exception does not apply, our analysis begins and ends with the first issue.

## A. Mootness

Article III of the United States Constitution limits our review to "only actual, ongoing controversies." *J.T. v. District of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (quoting *McBryde v. Comm. to Rev. Cir. Council Conduct*, 264 F.3d 52, 55 (D.C. Cir. 2001)). We cannot decide a case "if 'events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future.'" *Id.* (quoting *Clarke v. United States*, 915 F.2d 699, 701 (D.C. Cir. 1990) (en banc)). MSHA terminated the challenged Order over three years ago. Apart from the speculative, the Order no longer poses a risk of continuing legal consequences: no actual controversy remains for us to review and the case is accordingly moot.

Neither M-Class nor the Commission identified non-speculative harms. That a member of the public could look at M-Class's compliance history, notice that there was a terminated § 103(k) order and conclude "*something* occurred at that mine that affected the health and safety of miners," *Sec'y*

---

[5] The parties initially briefed only the second and third issues but we ordered supplemental briefing to address mootness. Per Curiam Order at 1, *Sec'y of Labor v. M-Class Mining, LLC*, No. 20-1369 (D.C. Cir. Mar. 3, 2021).

*of Labor v. M-Class Mining, LLC*, 42 FMSHRC 491, 496 (2020) (emphasis in original), is no more than a thinly-veiled reputational harm argument. Reputational harm, however, does not provide us with jurisdiction here. "Reputational harm may constitute an ongoing, redressable injury where it derives directly from an unexpired and unretracted government action," *Pulphus v. Ayers*, 909 F.3d 1148, 1153 (D.C. Cir. 2018) (internal quotations omitted); for example, if "a governmental designation directly harmed the plaintiff's professional reputation because the designation was inherently stigmatizing," *id.* In other words, "when injury to reputation is alleged as a secondary effect of an otherwise moot action, we have required that some tangible, concrete effect remain, susceptible to judicial correction." *Id.* at 1154 (internal quotations omitted). Any reputational harm to M-Class is tied to the possibility that someone *might* check M-Class's history of accidents and *might* draw a negative conclusion because of the terminated Order. Compared to the reputational harms discussed in *Pulphus*, M-Class's alleged reputational harm is distinguishable based both on no inherent stigmatization and on the uncertainty of reputational harm. *Id.* That the Order indicates "something" occurred in M-Class's mine, without assignment of fault or causation, differs greatly from an act of the Congress embodying a determination that an individual was a child abuser and danger to his own daughter, *Foretich v. United States*, 351 F.3d 1198, 1213 (D.C. Cir. 2003), the Fifth Circuit Judicial Council's "characterization" of a federal judge as engaging in a pattern of abusive behavior for years, *McBryde*, 264 F.3d at 54–57, or the United States Department of Justice's identification of certain films as political propaganda under the Foreign Agents Registration Act deterring a state senator from exhibiting those films, *Meese v. Keene*, 481 U.S. 465, 473–74 (1987). Here, any "claims of reputational injury [are] too vague and unsubstantiated to preserve [the] case from mootness." *McBryde*, 264 F.3d at 57.

Further, neither the Mine Act nor the precedent cited by the Commission and M-Class indicates that a § 103(k) order, once terminated, can serve as the basis for a later citation or enforcement action or be modified after termination. As noted by Commissioner Jordan in her dissent, "the Secretary does not factor the issuance of a section 103(k) order into any of the progressive enforcement mechanisms under the Mine Act . . . [and] the issuance of such an order is not considered in a mine's history of violations for purposes of MSHA's future proposed penalty assessments." *M-Class Mining, LLC*, 42 FMSHRC at 509 (Jordan, dissenting) (citing 30 U.S.C. §§ 814(e), 820 (Sections 104 and 110, respectively)). Section 110 provides penalties for violations of "mandatory health or safety standard[s]" or "any other provision of this chapter," 30 U.S.C. § 820(a)(1), but makes specific reference to a penalty for a violation of Section 103(j) only—requiring timely notification to the Secretary within 15 minutes of a death or injury or entrapment that "has a reasonable potential to cause death" at the mine, *id.* § 813(j). There might be a penalty under § 110 if a mine operator violated an *active* safety order under § 103(k)—for example, if M-Class had resumed mine operations in the closed area before the MSHA Inspector had issued the first modification—but there is no basis to impose a penalty based on a *terminated* safety order under § 103(k). Section 104(e), governing a pattern of violations, is even more limited to "a pattern of violations of mandatory health or safety standards in the coal or other mine which are of such nature as could have significantly and substantially contributed to the cause and effect of coal or other mine health or safety hazards." *Id.* § 814(e)(1). M-Class can point to no statutory authority

supporting the conclusion that a terminated § 103(k) order can serve as the basis for a later citation or enforcement action.[6]

The Commission and M-Class also rely on two FMSHRC decisions to support the proposition that a § 103(k) order can be modified after termination: *Secretary of Labor v. Wyoming Fuel Co.*, 14 FMSHRC 1282, 1288–89 (1992), and *Secretary of Labor v. Ten-A-Coal Co*., 14 FMSHRC 1296, 1298 (1992). *Wyoming Fuel Co.* and *Ten-A-Coal Co.* indicate that a citation issued under *§ 104* of the Mine Act can be modified after termination, not that a *§ 103(k)* safety order can be so modified. We agree with the Secretary that § 104 citations—and withdrawal orders—are distinguishable from § 103(k) safety orders. Pet'r's Suppl. Br. 3–5. Termination of a § 104(a) citation signifies that the violative condition has abated and that the mine operator is no longer subject to a § 104(b) withdrawal order for failure to abate but "not that the citation itself no longer exists for other legal purposes . . . [such as] subsequent contest and civil penalty proceedings." *Wyoming Fuel Co.*, 14 FMSHRC at 1288. There are no analogous citations or penalty proceedings under § 103(k). The functional difference between termination and vacatur in the context of a § 104 citation does not mean a *terminated* § 103(k) safety order— rather than a *vacated* § 103(k) safety order—threatens non-speculative legal consequences for the mine operator. Neither the Commission nor M-Class has identified any statutory basis for conversion of a § 103(k) safety order to a

---

[6] M-Class cites 30 C.F.R. § 50.10 and § 50.20, Resp't's Suppl. Br. 3, but § 50.10 requires that an operator provide notification of an accident "within 15 minutes" to MSHA and § 50.20 requires that an operator mail a completed accident report form to MSHA within ten working days after an accident, 30 C.F.R. §§ 50.10, 50.20. But M-Class has not argued it failed to comply with these reporting requirements.

§ 104 citation or withdrawal order.[7] That MSHA—while investigating an accident after issuing a § 103(k) safety order—could note a health or safety violation and issue a citation under § 104 does not mean that a terminated § 103(k) safety order can serve as the basis for a later citation or be modified after termination.

In sum, M-Class's challenge of the terminated Order is moot and we now assess whether an exception to mootness applies.

---

[7] Another case cited by the Commission, *Westmoreland*, did not address "conversion" of a § 103(k) safety order or its use as the basis for a § 104 citation. *Loc. Union 1889, Dist. 17 v. Westmoreland Coal Co.*, 8 FMSHRC 1317 (1986). In *Westmoreland*, the Commission—in the context of assessing miners' entitlement to compensation under 30 U.S.C. § 821—concluded that a § 107(a) "imminent danger" order need not itself cite "the violative conditions causing or underlying the issuance of the" § 107(a) order and indicated that a nexus could be drawn between a § 107(a) imminent danger order and a § 104 citation. *Westmoreland*, 8 FMSHRC at 1328–30. *Westmoreland* did not state that a § 107(a) order could be converted to or modified into a § 104 citation after termination. The § 104 citations in *Westmoreland* were issued before the § 107(a) order was terminated. *Westmoreland*, 8 FMSHRC at 1320. *Westmoreland*, at most, acknowledges that it is "procedurally possible" for the Secretary to modify an active § 107(a) order and after "completion of further investigation," cite violations under that modified order instead of "separately issu[ing an] allegation of violation under section 104." *Westmoreland*, 8 FMSHRC at 1328. In reaching this conclusion, *Westmoreland* relied on the final sentence of § 107(a), which provides that the issuance of a § 107(a) order "shall not preclude the issuance of a citation under" § 104. 30 U.S.C. § 817(a). To repeat, the Order was issued under § 103(k) and § 103(k) does not have language analogous to § 107(a) regarding a § 104 citation; further, the Order has been terminated and no § 104 citation has issued.

### B. The "Capable of Repetition But Evading Review" Exception

The "capable of repetition but evading review" exception does not apply. We recently explained that "[t]he capable of repetition but evading review exception applies if (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *J.T.*, 983 F.3d at 523 (internal quotations omitted). As the party invoking the exception, M-Class has the burden to establish its applicability. *Id.* The first prong is satisfied, as the Secretary concedes, because MSHA terminated the Order within 40 days of its issuance. Joint Appendix 221; Pet'r's Suppl. Br. 7. Turning to the second prong, we explained in *J.T.* that:

> This prong requires that the same parties will engage in litigation over the same issues in the future. The party invoking the exception must show a reasonable degree of likelihood that the issue will be the basis of a continuing controversy between the two parties. The relevant inquiry, however, is not whether the precise historical facts that spawned the plaintiff's claims are likely to recur. Rather, the wrong that is, or is not, capable of repetition must be defined in terms of the precise controversy it spawns, to wit, in terms of the legal questions it presents for decision.

*J.T.*, 983 F.3d at 524 (internal quotations omitted) (alterations adopted). Vital to our analysis, then, is how the legal wrong is defined. "The opportunities for manipulation are great. The more broadly we define the wrongful conduct, the more numerous are the possible examples, and the greater the

likelihood of repetition." *Clarke*, 915 F.2d at 703. Importantly, "we have made clear [that] a legal controversy so sharply focused on a unique factual context will rarely present a reasonable expectation that the same complaining party would be subjected to the same actions again." *J.T.*, 983 F.3d at 524 (internal quotations omitted) (alterations adopted). Put another way, we must ask whether "the case before us is highly dependent upon a series of facts unlikely to be duplicated in the future." *People for the Ethical Treatment of Animals, Inc. v. Gittens*, 396 F.3d 416, 424 (D.C. Cir. 2005). This case falls well within our caution: it presents a legal controversy regarding the validity of the terminated Order's issuance that is "so sharply focused" and "highly dependent upon a series of facts unlikely to be duplicated" that M-Class is not reasonably likely to face the same actions again.[8]

The Commission and M-Class rely on our decision in *Performance Coal Co.* But *Performance Coal Co.* is plainly distinguishable. In *Performance Coal Co.*, we were asked to review a § 103(k) order that remained in effect, having been modified over sixty times, and the Secretary admitted that MSHA would likely modify the order again. 642 F.3d at 235–37. On the contrary, the M-Class Order was modified twice and terminated. Further, *Performance Coal Co.* involved a clear question of statutory interpretation: whether § 105(b) of the Mine Act allows an operator to seek temporary relief from a § 103(k) order. *Performance Coal Co.*, 642 F.3d at 238–39. Granted, there is a statutory element to the issues here, but only in the context of whether, on these unusual facts, MSHA properly issued the now-terminated Order. *Performance Coal Co.*, then, does not control and M-Class has failed to

---

[8] Although M-Class has been subject to several other § 103(k) orders (14 in 2018 and 10 in 2019), *M-Class Mining, LLC*, 42 FMSHRC at 510 n.3, it has not identified one in which it disputes an accident in fact occurred.

demonstrate that this case otherwise falls within the "capable of repetition but evading review" exception.[9]

Because the case is moot and does not fit the exception, we are without jurisdiction to review the Commission decision and, accordingly, we dismiss the petition. As we explained in *Tennessee Gas Pipeline Co.*, "the appropriate disposition of moot administrative orders" is vacatur of the administrative order we are without authority to review. 606 F.2d at 1382 (citing *A.L. Mechling Barge Lines, Inc.*, 368 U.S. at 329).

For the foregoing reasons, we dismiss the petition, vacate the Commission decision and the Order and remand to the Commission for proceedings consistent with this opinion.

*So ordered.*

---

[9] We do not hold, however, that a challenge to a terminated § 103(k) order will be moot or fail to satisfy an exception to mootness in every instance.