# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 4, 2024         Decided April 18, 2025

No. 22-1184

FAHMI AHMED MOHARAM,
PETITIONER

v.

TRANSPORTATION SECURITY ADMINISTRATION AND ADAM
STAHL, IN HIS OFFICIAL CAPACITY AS ACTING ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION,
RESPONDENTS

———

Consolidated with 23-1198

———

On Petitions for Review of a Final Decision
of the Transportation Security Administration

———

*James Sigel* argued the cause for petitioner. With him on
the briefs were *Naz Ahmad*, *Ramzi Kassem*, and *Robert S. Litt*.

*Koren Bell*, *Michael J. Gottlieb*, and *Mark T. Stancil* were
on the brief for *amici curiae* Asian Americans Advancing
Justice, et al. in support of petitioner.

*Joshua P. Waldman*, Attorney, U.S. Department of Justice, argued the cause for respondents. With him on the supplemental brief were *Brian M. Boynton*, then-Principal Deputy Assistant Attorney General, and *Sharon Swingle*, Attorney.

Before: SRINIVASAN, *Chief Judge*, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

WILKINS, *Circuit Judge*: Petitioner Fahmi Ahmed Moharam is a dual United States-Yemeni citizen who has lived in the United States for decades, but whose family resides in Yemen. Moharam frequently travels between the two countries to visit family and for religious study. In 2017, when returning to the United States from Yemen via Saudi Arabia, Moharam was stopped, interviewed, and denied boarding his flight. Through the redress process administered by Respondent Transportation Security Agency ("TSA"), he learned that he had been placed on the No Fly List.

Moharam sought to discover why he was on the No Fly List so as to advocate for his removal. The Government supplied only a sparse statement that Moharam's designation was based on his travel to, and activities in, Yemen between 2011–2017. Providing further detail, the Government claimed, would reveal classified or otherwise-restricted national security information. After Moharam petitioned for review in this Court, though, the Government notified him that he was no longer on the No Fly List and would not be relisted based on the currently available information. Moharam's removal from the No Fly List deprives us of jurisdiction over his Petitions for Review. We thus dismiss them as moot.

3

## I.

## A.

The TSA is required by statute to establish policies and procedures "to identify individuals on passenger lists who may be a threat to civil aviation or national security; and if such an individual is identified, notify appropriate law enforcement agencies, prevent the individual from boarding an aircraft, or take other appropriate action with respect to that individual." 49 U.S.C. § 114(h)(3)(A)–(B). Congress further provided that the TSA shall "assume the performance of the passenger prescreening function of comparing passenger information to the . . . no fly lists and utilize all appropriate records in the consolidated and integrated terrorist watchlist maintained by the Federal Government in performing that function." *Id.* § 44903(j)(2)(C)(ii). The TSA must also "establish a procedure to enable airline passengers . . . to appeal such determination and correct information . . . in the system," *id.* § 44903(j)(2)(C)(iii)(I). That program, currently known as the Department of Homeland Security ("DHS") Traveler Redress Inquiry Program ("TRIP"), allows individuals to "request redress if they believe they have been . . . [d]enied or delayed boarding transportation due to DHS screening programs." 49 C.F.R. § 1560.3 (2023).

Through TRIP, "requesters [are] provided an opportunity to request and receive additional information regarding their status." J.A. 363. "Such additional information will include, where possible[,] when national security and law enforcement interests at stake are taken into account, an unclassified summary of information supporting the individual's No Fly List status." *Id.* That said, "[t]he amount and type of information provided will vary on a case-by-case basis[,]" and "[i]n some circumstances, an unclassified summary may not

be provided when the national security and law enforcement interests at stake are taken into account." *Id.*

About "98% of DHS TRIP inquiries are found to be cleared of any connection with terrorist watchlisted identities." J.A. 362 (emphasis omitted). But if the TSA affirms designation on a watchlist, "it will state the basis for the TSA Administrator's decision (to the extent feasible in light of the national security and law enforcement interests at stake)." J.A. 363.

**B.**

The parties do not materially contest the facts supporting Moharam's petition, which we accept as true for the purposes of this appeal. On October 25, 2017, Moharam was denied boarding on a Saudia Airlines flight departing from King Abdulaziz International Airport. He appealed to TRIP on October 29, 2017, and on February 14, 2018, was notified that he was on the No Fly List because he was identified as potentially posing a "threat to civil aviation or national security." J.A. 27 (quoting 49 U.S.C. § 114(h)(3)(A)). Moharam lives in the United States, but his mother, wife, and four of his five children all reside in Yemen.

On March 13, 2018, he requested additional information and administrative review of his status on the No Fly List. He sought "the specific criterion under which [he] ha[d] been placed on the No Fly List, the nominating agencies and any information pertaining to [his] placement on the No Fly List, and the timeline and process for [his] placement on the No Fly List." J.A. 42. Moharam stated his expectation that the agency would provide an unclassified summary of the information relied upon to maintain him on the List. Over the following months, he repeatedly followed up with TRIP, including by identifying intervening authority and noting that he was

represented by cleared (Top Secret/Sensitive Compartmented Information) counsel.

On February 20, 2020, TRIP supplemented its response, declaring that it "determined that [Moharam was] an individual who represents a threat of engaging in or conducting a violent act of terrorism and [was] operationally capable of doing so." J.A. 70. The only information in the "unclassified summary" was that "the Government has concerns about [Moharam's] activities during frequent and extended travel to Yemen between 2011 and 2017" and that "[t]he information [he] shared during [his] interview at the U.S. Consulate in Jeddah in November 2017 did not assuage the Government's concerns." J.A. 70–71. TRIP stated that it was "unable to provide additional disclosures, beyond the summary" due to "national security concerns." J.A. 70. Moharam reiterated his requests that cleared counsel be granted access to any classified information supporting the agency's decision, and asked for a copy of the interview described in the decision. The agency replied that the "TSA does not disclose to redress applicants, or the applicant's counsel, classified information," and as to the interview, "DHS TRIP [was] unable to provide that information." J.A. 93.

Moharam protested that he could not meaningfully respond to the unclassified summary that did not specify which "activities" formed the basis for his placement on the No Fly List. In support of his removal from the List, he filed a sworn affidavit attesting, among other things, that he went to Yemen during the relevant time period to visit his family and to pursue religious study. He also submitted an affidavit from his wife and an expert declaration.

Meanwhile, on October 6, 2021, Moharam filed suit in the U.S. District Court for the District of Columbia "seek[ing] an

order that requires defendants to remedy their constitutional and statutory violations, including by (1) removing Mr. Moharam from the No Fly List . . . and (2) providing a declaration that Mr. Moharam is no longer on the No Fly List or in the [Terrorist Screening Database,] TSDB[,] and will not be placed back on such list or in such database based on currently available information." Compl. ¶ 1, No. 21-cv-2607 (JDB) (D.D.C. Oct. 6, 2021), ECF No. 1. Those proceedings have been stayed pending this appeal.

On June 9, 2022, the TSA issued its final order determining that Moharam was properly included on the No Fly List. The agency stated that it considered Moharam's responsive evidence but ultimately concluded that the totality of the information supported his placement on the List.

Moharam timely petitioned for review of that decision on August 5, 2022. He challenges the TSA's decision to maintain him on the No Fly List as arbitrary and capricious and in violation of his procedural due process rights, and he "requests that this Court hold the Final Decision unlawful and set aside, modify, or amend it, and/or remand." Pet'n for Review, No. 22-1184, ECF No. 1958969, at 1–2. Moharam also separately sought review of the agency's decision to withhold certain information in the Administrative Record. Pet'n for Review, No. 23-1198, ECF No. 2010233. The petitions were held in abeyance pending resolution of *Busic v. TSA*, which was decided on March 20, 2023. 62 F.4th 547 (D.C. Cir. 2023) (per curiam).

On March 19, 2024, the Supreme Court unanimously decided *Federal Bureau of Investigation ("FBI") v. Fikre*, concluding that the Government's representation that the plaintiff "will not be placed on the No Fly List in the future based on the currently available information" did not deprive

7

the court below of Article III jurisdiction, as such a statement did not demonstrate that the challenged conduct could not reasonably be expected to recur. 601 U.S. 234, 240–45 (2024). On May 2, 2024, the Government notified Moharam that he was removed from the No Fly List and will not be placed on the No Fly List in the future based upon the currently available information, an identical representation. That notice was issued by TRIP in a letter, which stated in relevant part that it had "been advised that, based on an assessment of the currently available information, you have been removed from the No Fly List and that you will not be placed back on the No Fly List based on the currently available information." Mot. to File Suppl. Br. & Add'l R. Materials Addressing Potential Mootness Attach. 1, ECF No. 2053200, at 12 [hereinafter Mot. to File Suppl. Br.]. It further stated, "This letter supersedes the letter sent to you on June 9, 2022." *Id.*

The Government sought leave to file a supplemental brief regarding mootness, *see id.* at 6, but ultimately declined to do so. The Court later *sua sponte* ordered supplemental briefing to address whether it retained jurisdiction over the petitions for review following the Government's removal of Moharam from the No Fly List.

## II.

Moharam's removal from the No Fly List moots both his petitions for review and deprives us of jurisdiction to decide the merits of his claims, notwithstanding *FBI v. Fikre*, 601 U.S. 234 (2024), because the petitions are no longer redressable based on the relief requested.

## A.

As a threshold matter, Moharam disputes that the TRIP Letter conveying his removal from the No Fly List has the legal

effect of rescinding the TSA's final order maintaining him on the No Fly List. Specifically, he questions the authority of TRIP to revoke a TSA final order because if the administrative order remains in effect, we can redress his injury by setting that order aside.

Per the Government, since the TSA does not maintain the watchlists, it can only remove an individual from the No Fly List as part of the TRIP process. Outside of the redress procedures, removal of individuals from the No Fly List is the exclusive province of the Terrorism Screening Center ("TSC"), a subdivision of the FBI.

Prior to 2015, an individual who suspected they were on the No Fly List could seek redress through TRIP, which "would forward the complaint to TSC . . . [to] determine whether the complainant was on the No Fly List and, if so, whether the complainant's continued inclusion on the list was justified." *Kashem v. Barr*, 941 F.3d 358, 366 (9th Cir. 2019). "After TSC made this determination, [] TRIP would advise the complainant by letter that the review was complete." *Id.* Following litigation, the procedures were revised. Today, TRIP still forwards redress requests to TSC for review, and TSC continues to provide TRIP with a recommended disposition. But now, "[t]his recommendation, along with the complainant's complete DHS TRIP file, is provided to the TSA Administrator, who is the final decisionmaker." *Id.* "[T]he TSA Administrator may either remand the case to TSC with a request for additional information or issue a final order, a copy of which is provided to the complainant." *Id.*

But once the redress process is complete—*i.e.*, the TSA has issued its final order—the TSC continues to independently review the No Fly List as a matter of course. As the sole agency in control of the List, TSC alone retains authority to remove

individuals from the No Fly List, separate and apart from the TSA's implementation of TRIP, which is only triggered by a redress request. The Government has explained that TSC's independent removal of Moharam from the No Fly List supersedes any legal effect of the TSA Administrator's prior final order.

The TSC thus had the authority to remove Moharam from the No Fly List following a routine review. TRIP's letter informing Moharam that he had been removed did not conflict with the TSA Administrator's prior final order maintaining him on the List, because the former was the result of an independent and contemporaneous review, whereas the latter was an administrative decision rendered at a particular point in time based on a static record. And TRIP's letter updating Moharam's status on the No Fly List supersedes the TSA's prior final order.

And, as described further *infra* Section III.B, the operative issue is whether Moharam remains on the No Fly List: no one disputes that he does not, or that he will not be returned to the List based only on the information supporting his initial designation.

**B.**

Article III requires Moharam to show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Fore River Residents Against the Compressor Station v. FERC*, 77 F.4th 882, 888 (D.C. Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)) (internal quotation marks omitted). "A case is moot if a decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C.

Cir. 2024) (internal quotation marks and citation omitted). "This occurs when, among other things, the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Schmidt v. United States*, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (cleaned up). "[T]he Government, not petitioners, bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022).

"We must assume that the plaintiff will 'prevail' unless her argument that the relief sought is legally available and that she is entitled to it is 'so implausible that it is insufficient to preserve jurisdiction.'" *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019) (quoting *Chafin v. Chafin*, 568 U.S. 165, 174 (2013)). Here, Moharam has expressly disclaimed seeking certain relief, namely declaratory or injunctive relief. Pet'r's Opening Suppl. Br. 11.[1] Instead, he asks us to "amend, modify, or set aside" the agency's decision maintaining him on the No Fly List, 49 U.S.C. § 46110(c), by clarifying "that the TSA Administrator had, in fact, erred either in concluding that Mr. Moharam could be properly placed on the No Fly List, in depriving him of the information necessary to challenge that placement, or both," Pet'r's Opening Suppl. Br. 12. Specifically, he seeks a "holding that the agency had, in fact, violated [his] rights to procedural due process," arguing that such a ruling "would ensure that the agency could not continue to apply these unconstitutional procedures if the government again places [him] on the No Fly List." *Id.* at 14–15. The crux of this request is that Moharam seeks a judicial decision setting aside the *reasoning* that animated the TSA's order, which

---

[1] Because Moharam disclaims any request for declaratory or injunctive relief, we need not decide whether 49 U.S.C. § 46110(c) permits this Court to order such remedies.

would "have effect if and when he was placed again on the No Fly List." Oral Arg. 7:42–8:07.

But what Moharam describes is a classic advisory opinion. As the Government notes, "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). Because here, Moharam asks "for nothing more than an opinion, [he] cannot satisfy Article III." *Id.* We do not have jurisdiction to issue rulings that cannot "be carried into effect" and "to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Loc. No. 8-6, Oil, Chem. and Atomic Workers Int'l Union, AFL-CIO v. Missouri*, 361 U.S. 363, 367 (1960) (cleaned up); *see also, e.g.*, *Louie v. Dickson*, 964 F.3d 50, 55–56 (D.C. Cir. 2020) (dismissing petition for review under § 46110 as moot where agency's withdrawal of action had the same effect as an order remanding to the agency to "withhold its concurrence" written in support of the action); *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1346 (D.C. Cir. 2014) (dismissing petition for review under § 46110(c) as moot where challenged training protocols expired, reasoning that "[n]othing remains at stake in a dispute over a proposed amendment to a document that no longer has legal effect," such that the Court has "no power to resolve the dispute"); *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1130 (D.C. Cir. 2024) (petition was moot where only remedy available was "an advisory opinion addressing the Commission's underlying interpretation of its jurisdiction so that our opinion might be applied to other currently hypothetical projects").

And, in any event, such an advisory opinion would not have the preclusive effect Moharam suggests. Although he argues that he could engage in similar categories of conduct and be listed again for the same reasons as before, in the

national security context, repeating identical conduct can pose a greater national security concern and constitute "new" intelligence. Otherwise stated, we could not issue an opinion regarding the decision based on the administrative record below that would bind the Government and foreclose it from placing Moharam back on the No Fly List if he engaged in the same or similar conduct because that would present a different and novel informational record for the TSA's review. *See infra* Section III.C (explaining why Moharam's claims are not reasonably likely to recur).

Moharam's procedural due process claim does not change this analysis because the constitutional issue revolves around Moharam's ability to meaningfully contest his designation on the No Fly List under the procedures used below. This is why Moharam's citation to *Connecticut Light & Power Co. v. FERC*, 627 F.2d 467 (D.C. Cir. 1980), is unavailing. In that case, the Court determined that a settlement offer did "not resolve all the issues presented in the petition," and thus did not moot the case because it did not "reveal the reason" behind the agency's challenged decision, which, if disclosed, would have allowed petitioner to "fashion future rate filings to avoid such lengthy suspensions and file meaningful rehearing petitions." *Id.* at 469. But at issue there was a statutory requirement that the agency disclose the rationale for its decisions, such that the court's ruling could redress a distinct injury (the violation of the statute). *See id.* at 470 (citing 16 U.S.C. § 824d(e) (1976), which provides that FERC shall supply "a statement in writing of its reasons for such suspension"). Here, however, any right Moharam may have to obtain information regarding his placement on the No Fly List is incidental to his ability to use it to contest his listing, not a freestanding statutory right. Because he is no longer on the List, he has no need to contest such a designation. His only interest in the information is in furtherance of his challenge to the TSA's final order, the effect

of which has been extinguished. That claim too is moot, and for the same reason, so is his second Petition for Review.

*Fikre* is not to the contrary. That case arose from a civil lawsuit that, among other things, argued that "the government placed [the plaintiff] on the No Fly List for constitutionally impermissible reasons" and sought declaratory and injunctive relief. 601 U.S. at 243, 239, 242. Per his complaint, if successful, Fikre could obtain a declaration that the Government's reliance on particular evidence (e.g., attendance at a mosque) violated his constitutional rights, as well as an injunction against future consideration of such evidence. *See* Fifth Am. Compl. at 41–45, *Fikre v. FBI*, No. 13-cv-899 (D. Or. Sept. 28, 2016), ECF No. 87 [hereinafter *Fikre* Compl.]; *Fikre*, 601 U.S. at 242. By contrast, Moharam has made explicit that he is *not* seeking declaratory or injunctive relief;[2]

---

[2] Moharam argues that the relief requested is "the functional equivalent" of a declaratory judgment, citing to Justice Kavanaugh's concurrence in *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 588 U.S. 1 (2019), for the proposition that the "set aside" language in Section 46110 allows the Court to issue a declaratory-type judgment that "an agency has acted unlawfully." Pet'r's Reply Suppl. Br. 6. But there, the jurisdictional statute provided "exclusive jurisdiction to make and enter, on the petition, evidence, and proceedings set forth in the record on review, a judgment determining the validity of, and enjoining, setting aside, or suspending, in whole or in part, the order of the agency." 28 U.S.C. § 2349(a). Section 2349 authorizes injunctive relief, specifically "enjoining, setting aside, or suspending" an agency order, and then *separately* confers authority to enter a declaratory judgment (i.e., "a judgment determining the validity of" agency action). When Justice Kavanaugh wrote that "[t]he Act says 'exclusive jurisdiction' to 'enjoin, set aside, suspend,' or 'determine the validity' of the order," and that "[t]hose phrases afford the court of appeals exclusive jurisdiction to issue an injunction or declaratory judgment regarding

nor does he challenge the legality of the bases the Government used to initially list him. "Fikre [did] not challenge the TSA Administrator's decision made at the end of the DHS TRIP process or seek a court order requiring the TSA Administrator to remove him from the No Fly List." *Fikre v. FBI*, 35 F.4th 762, 775 (9th Cir. 2022). "Rather, his claims concern[ed] the Screening Center's role in assigning him to the No Fly List in the first place." *Id. Fikre* thus does not control.

For many of the same reasons, *Wall v. TSA*, No. 21-1220, 2023 WL 1830810, at *2 (D.C. Cir. Feb. 9, 2023) (per curiam), does not help Moharam, either. That case involved a challenge to an agency policy that the TSA expressly stated it would likely re-invoke in the future. *See id.* at *2. But here, the agency has confirmed it will *not* re-list Moharam based on the information it initially used to designate him on the No Fly List. Moreover, *Wall* involved a request for injunctive relief, which Moharam has disclaimed. *See* Pet'rs' Jt. Opening Br. 22, *Wall v. TSA*, No. 21-1220 (Apr. 19, 2022), ECF No. 1943488. And finally, the *Wall* decision concluded that claims that were tethered to the underlying administrative record were moot "because, even if the TSA reissues its masking directives, it will necessarily create a new administrative record underlying those orders," such that "the administrative records before" the panel would "not have any continuing legal consequence." *Id.* In other words, the claims in *Wall* that challenged a continuing government practice and sought prospective remedies (like *Fikre*) were not moot, whereas those concerning particular agency decisions rendered based on static administrative records (like here) were moot.

---

the agency's order," he did not interpret the statutory term "set aside" as authorizing declaratory relief. *PDR Network*, 588 U.S. at 20–21 (Kavanaugh, J., concurring).

Moharam's petitions for review are therefore moot.

Nor does Moharam's claim of reputational injury override the mootness of his challenge.  While he claims that the TSA's challenged order maintaining him on the No Fly List caused him reputational harm, that order has now been superseded and is no longer in effect.  To the extent Moharam believes that he continues to suffer some lingering reputational harm from the now-superseded order, we have held that "where reputational injury is the lingering effect of an otherwise moot aspect of a lawsuit, no meaningful relief is possible and the injury cannot satisfy the requirements of Article III." *Anderson v. Carter*, 802 F.3d 4, 11 (D.C. Cir. 2015).

## C.

"Typically, an end to offending behavior moots a case.  But there are exceptions." *PETA v. USDA*, 918 F.3d 151, 157 (D.C. Cir. 2019).  Although "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," *Friends of the Earth, Inc. v. Laidlaw Env't Servs*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted), "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968).  That is, a case is moot if "(1) there is no reasonable expectation that the conduct will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *True the Vote, Inc. v. IRS*, 831 F.3d 551, 561 (D.C. Cir. 2016) (citation omitted).

Notwithstanding the Government's voluntary cessation here, the petitions are moot.  At the outset, we clarify that this decision does not endorse voluntary cessation that aims to moot

future, potentially redressable claims by removing individuals from the No Fly List following the initiation of litigation. Instead, our ruling today is rooted in the narrow relief sought under these petitions for review.

*First*, there is no reasonable expectation that the conduct will recur. Core to this inquiry "is the task of defining the wrong that the defendant is alleged to have inflicted." *Clarke v. United States*, 915 F.2d 699, 703 (D.C. Cir. 1990) (en banc). Here, the conduct challenged is the agency's determination, based on the public record and procedures below, that Moharam warranted placement on the No Fly List. Of note, Moharam does not challenge the lawfulness of the agency's criteria or its reliance on any category of information, he merely contends that it acted unlawfully when it denied him access to the information and that the record did not support his inclusion on the List. The Government has provided "sufficient assurance" that it will not place Moharam on the List based on the record before it as of May 2024. *Porup v. CIA*, 997 F.3d 1224, 1233 (D.C. Cir. 2021). While additional information might cause the Government to once again place Moharam on the List, and Moharam may seek to challenge that decision as arbitrary and capricious, this would be a distinct legal wrong because the agency's decision would be based on a different record.[3]

Again, *Fikre* does not counsel otherwise. There, the challenged conduct was different: the plaintiff had filed a lawsuit before the District Court, in which he relied on different causes of action, namely constitutional claims regarding his substantive due process right to international travel, rights to counsel and against self-incrimination, freedom of association,

---

[3] The Government's representations are critical to our disposition of the case and we expect it to adhere to its submissions fully going forward.

right against unreasonable searches and seizures, and torts of false arrest and imprisonment, assault and battery, and torture. *See* Fikre Compl. at 23–37. Fikre also brought various statutory claims challenging the investigation that yielded the contested information. *Id.* at 38–40. The Court's mootness analysis focused on Fikre's allegation that "the government placed him on the No Fly List for constitutionally impermissible reasons." 601 U.S. at 242. Regardless of his removal from the List, the Court held that the challenged conduct (e.g., unconstitutionally listing him for his religious identity) could be expected to recur. *Id.* at 242–43 (holding that the declaration did not "speak[] to whether the government might relist him if he does the same or similar things in the future—say, attend a particular mosque or refuse renewed overtures to serve as an informant").

This case is different. Since the Government has made clear that it will not put Moharam on the No Fly List based on the same information as before, if TSC re-lists Moharam based on some other evidence, the propriety of which Moharam does not challenge, and the TSA Administrator upholds that determination, the record before the TSA would be different. If Moharam were to later challenge his placement on the List as arbitrary and capricious, that claim would assert that a different legal wrong had occurred: that the *new* record before the agency rendered its decision unreasonable. Thus, unlike *Fikre*, where the same wrong (considering religious affiliation as evidence of terrorism) could repeatedly reoccur and support future placement on the list, Moharam's challenge is limited to the record before the agency when it upheld his status on the List, which will not be the subject of future designation on the List. "A legal controversy so sharply focused on a unique factual context does not present a reasonable expectation that the same complaining party would be subjected to the same actions again." *Spivey v. Barry*, 665 F.2d 1222, 1234–35 (D.C.

Cir. 1981) (cleaned up); *Armstrong v. FAA*, 515 F.3d 1294, 1296 (D.C. Cir. 2008) ("[T]he issue presented—whether it was arbitrary and capricious for the Administrator to make an emergency determination under the specific factual circumstances of this case—will never arise again.") (citation omitted).

*Second*, the interim relief has completely eradicated the effects of the violation. Moharam's petition for review "request[ed] that this Court hold the Final Decision unlawful and set aside, modify, or amend it, and/or remand." Pet'n for Review, No. 22-1184, ECF No. 1958969, at 2. The agency has set aside its determination that current information warranted Moharam's placement on the List. As described, "[a]ny opinion regarding the [propriety of the former order] would be merely advisory." *Nat'l Min. Ass'n v. U.S. Dep't of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001). Moharam's stated injury was that he could not fly internationally to "visit[] his mother, wife and children," Pet'r's Opening Br. 19, but now, he can do so. He has been removed from the No Fly List. The effects of the violation are thus eradicated.

Nor are the claims here capable of repetition, yet evading review, as Moharam urges. That doctrine "permits departure from settled rules of mootness only in an exceptional situation," *Nw. Airlines, Inc. v. FAA*, 675 F.2d 1303, 1308 (D.C. Cir. 1982) (cleaned up), such as when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again," *Sec'y of Lab., Mine Safety & Health Admin. v. M-Class Mining, LLC*, 1 F.4th 16, 24 (D.C. Cir. 2021) (citation omitted). The party invoking the exception must prove it applies. *See Sw. Bell Tel. Co. v. FCC*, 168 F.3d 1344, 1350–51 (D.C. Cir. 1999).

19

Just as there is no reasonable expectation that the conduct will recur, the challenged conduct—listing Moharam on the No Fly List based on identical information as his initial designation—is not capable of repetition. *Cf. M-Class Mining*, 1 F.4th at 24 (case not capable of repetition because "it present[ed] a legal controversy regarding the validity of the terminated Order's issuance that is so sharply focused and highly dependent upon a series of facts unlikely to be duplicated that M-Class is not reasonably likely to face the same actions again") (cleaned up). When we have found conduct capable of repetition, as in *British Caledonian Airways v. Bond*, the petitioners' challenge was to facial policies, such as the FAA's statement that it "ha[d] the legal authority, under such circumstances, to disregard valid airworthiness certificates issued by nations with whom the United States has entered into binding aviation agreements," which meant that, as a result of this policy, petitioners "reasonably c[ould] expect to be subjected to the same action at some time in the future." 665 F.2d 1153, 1158 (D.C. Cir. 1981). Moharam's challenge is to the since-eradicated effects of procedures and outcomes of a particular agency action. That challenge is incapable of repetition in light of the Government's representations.

Neither exception to mootness applies.

**III.**

We thus dismiss the petitions for review as moot. We further dismiss the Government's motion to file portions of its brief and the record *ex parte* as moot. *See In re GTE Serv. Corp.*, 762 F.2d 1024, 1026 (D.C. Cir. 1985)

*So ordered.*